Sansbury *vs.* Middleton.

---

## John H. Sansbury *vs.* Charles S. Middleton.

The 14th section of the 4th article of the constitution provides that "There shall be in each county a clerk of the circuit court, who shall be elected" by the people, "and shall hold his office for the term of *six years from the time of his election,* and until a new election is held," and "in case of a *vacancy in the office* of a clerk," the judge of the court shall "*appoint* a clerk until the general election of delegates held next thereafter, when a clerk shall be *elected to fill such vacancy.*" Held:

Sansbury *vs.* Middleton.

That a clerk *elected by the people* to fill a *vacancy* under this clause of the con-
stitution, holds his office for *six years* from the time of his election, and not
simply for the *unexpired term* of his predecessor.

APPEAL from the Circuit Court for Prince George's county.

This appeal was taken from an order of the court below,
refusing the application of the appellant for a *mandamus* to
compel the appellee to surrender to him the office of clerk of
the circuit court for Prince George's county.    The facts of the
case are fully stated in the opinion of this court, as also in the
following opinion of the court below, (CRAIN, J.,) delivered
upon passing the order appealed from:

"This is an application for a *mandamus* by the petitioner
against Charles S. Middleton, to obtain possession of the office
of clerk of the circuit court for Prince George's county.

"The case has been argued with eminent ability by the
counsel engaged for the respective parties, and is now sub-
mitted for my decision.

"It appears, from the petition and answer, that Owen Nor-
folk was elected clerk in November 1851, and died in Novem-
ber 1854; that Edward W. Belt was appointed, by the circuit
judge, to the office, and continued to act as clerk of the circuit
court for Prince George's county, until the November election
1855, when Charles S. Middleton, the respondent, was elected,
by the people of Prince George's county, clerk, and in pursu-
ance of the constitution, was commissioned and qualified as
such, and is now in possession of the office, claiming to hold
the same for six years from his election.    At the last November
election, John H. Sansbury was elected clerk, and he now
claims possession of the office, alleging that he has complied
with the requisites of the constitution, by giving bond, and
taking and subscribing the oath, as prescribed by the constitu-
tion, and invokes the aid and power of this court to obtain
possession of it.

"To settle this controversy and adjudicate the conflicting
claims of the parties, it now devolves on this court to give a
construction of the constitution of the State, in reference to
the tenure of office of the clerk of the circuit court of this

38      v. 11.

Sansbury *vs.* Middleton.

county. The terms of the constitution which are to control this question, are to be found in the 14th section of the 4th article, and this is the only clause directly bearing on the question. By the 14th section it is provided, 'that a clerk shall be elected in each county, and shall hold his office for the term of *six years* from the *time of his election.* In case of a *vacancy* in the *office* of a clerk, the judge of the court of which he was clerk, shall have power to appoint a clerk until the general election of delegates held next thereafter, when a clerk shall be elected to fill such vacancy.' The constitution having conferred on the people the power to elect a clerk, also provided a term of office, which no doubt was thought, by the makers of the constitution, sufficient to ensure fitness, qualification and experience in the incumbent, and, in construing the constitution, we are bound to give it a construction which will subserve, and not defeat, the design and intention of its makers. It does, therefore, appear to me that the judiciary are not authorized to abridge the term for which a clerk is elected, under the constitution, by the people, unless there is some language or provision in the constitution to limit or restrict the term for which he has been elected. I have diligently searched the constitution, and I am unable to find any language or provision limiting or restricting the term of six years, for which, by the 14th section of the 4th article, clerks are elected.

" If it was the intention and design of the makers of the constitution that clerks should be elected for *six* years, unless we can find some language, provision or limitation in the constitution to limit, control or defeat that design and intention, it must be conceded that every clerk elected by the *people,* must hold his office for six years; but it is contended and insisted upon by the counsel for the petitioner, that the use of the word *'vacancy'* was sufficient to limit the term of office, and clearly designates the term for which Charles S. Middleton was elected clerk.

" Can the use of the word vacancy, as employed in the constitution, be sufficient to modify the express language previously used in the same section? The word vacancy, in its usual and

accepted sense and meaning, is employed to designate when a place is not filled and supplied, and the makers of the constitution employed it in this section of the constitution merely to designate when the office of clerk was vacant, and the right of the people to elect a successor recurred. Certainly, against the language of the constitution so explicit, and the spirit and intention so manifest, the word vacancy was not designed to apply to the term of office of the incumbent, but to the office itself. For what period was Charles S. Middleton elected? The words of the constitution are imperative. 'The clerk shall hold his office for the term of six years.' What right or power has the judiciary to limit or restrict the term of office, unless the power is found in the constitution? But, looking at the policy of the constitution, I cannot see any good or sufficient reason why a clerk elected to fill a vacancy should not hold his office for six years. The same constituency who elected a clerk for six years in 1851, for the circuit court of Prince George's county, also elected Charles S. Middleton clerk of the same court in 1855; and why should this court decide that Charles S. Middleton was not elected for the constitutional term, when his election was the result of a rightful exercise of the power conferred on the people by the constitution? We are authorized to look at the whole constitution, when we are called on to construe any part of it; and I am confirmed in these views by looking at that part of the constitution in reference to State's Attorneys. By looking at the first and fifth sections of the 5th article of the constitution, I find that State's Attorneys are also elected by the people for four years, and in case of vacancy, the same power is conferred on the circuit judge to appoint until the next election of delegates, when said vacancy shall be filled by the people 'for the *residue* of the term thus made vacant.' From the language used in this clause of the constitution, it is perfectly clear and satisfactory that the framers of the constitution, when they wished and designed to limit and restrict the term of office, used apt and appropriate language for the purpose, and did not do so by implication. They expressly say, *for the residue of the term*. That is the language used to limit the term of office

of State's Attorney. We find no such limitation on the clerk; and reasoning from analogy, we must conclude that they did not intend or design any such limitation. The court, during the argument of this cause, was referred to the case of *Marshall vs. Harwood*, 5 *Md. Rep.*, 423. I have carefully examined that case, and I think it fully sustains my views in the case. Bateman had been elected librarian for two years; before the expiration of the two years, he resigned, and the Legislature elected Harwood. It was contended, in the argument of this case, that Harwood was elected for the unexpired term of Bateman, but the court decided that Harwood was elected for two years from the day of his election; and Judge Mason, in delivering the opinion of the court, very justly and properly says: 'Neither the public interest, nor any wise design of the constitution, that we can discover, would be promoted by coupling Mr. Harwood's election with the *previous term* of Mr. Bateman.'

"It is equally clear, that the election of Middleton as clerk of the circuit court for Prince George's county, for six years, cannot be prejudicial to any interest. It is not violating the rights of the people; it is not enlarging the time beyond the term of six years; it does not lead to any inconvenience, or subject the State or the people of Prince George's county to any loss. With these views, as I have not been able to find any provision or language in the constitution to limit the term of office of clerk of the circuit court to less than six years, and believing that I am gratifying the intention and design of the constitution, by making the term for which Charles S. Middleton was elected, six years, I decide his answer sufficient. The application for a *mandamus* is therefore refused, and the rule discharged."

From this order the applicant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Thos. F. Bowie, Edward W. Belt* and *Thos. S. Alexander* for the appellant:

The question in this case depends upon the true construction of the 14th section of the 4th article of the constitution. In construing this instrument, but little aid can be derived from the peculiar and differing provisions of the constitutions of other States, decisions construing which have been invoked by the appellee. Our constitution must be interpreted by its own provisions, by the intent of its framers, to be gathered from the whole instrument, and according to the rules of construction which are laid down by our own courts. This court has said, our constitution is "not to be interpreted according to the words in particular clauses. The *whole* must be considered, with a view to ascertain the sense in which the words were employed, and its terms must be taken in their *ordinary* and *common acceptation,* because they are presumed to have been so understood by the framers, and by the *people* who adopted it: This is unquestionably the correct rule of interpretation." *Manly vs. The State,* 7 *Md. Rep.,* 147. "We think the constitution ought to have a *common sense* interpretation, by which we mean, the sense in which it was understood by *those who adopted it."* "Although it is a well recognized canon of construction, that where legal terms are used in a *statute,* they are to receive their technical meaning, unless the contrary plainly appears to have been the intention of the Legislature, the principle, however, does not apply to the interpretation of the *organic law,* which is to be construed according to the acceptation of those *who adopted* it, as the supreme rule of conduct, both for officials and individuals." *State vs. Mace,* 5 *Md. Rep.,* 350, 351.

Without going back, therefore, to the definition of *"office,"* or considering what *vacancy* in an office means, at *common law,* we must ascertain what was meant and understood by the *people,* when they adopted this section of our present constitution. The most important changes effected by this instrument, are the vesting in the *people the appointing power,* and *limiting the tenure* of all offices to *fixed* and *stated periods.* Judges who, by the old constitution, were appointed by the executive, and held their office during *good behavior,* are now *elected* by the people, and hold their office for *the term of ten* years. A

clerk, in the language of the section under consideration, is elected by the people of the county, and holds his office for the "*term of six years* from the time of his election, and *until a new election is held*, and is *re-eligible* thereto," &c. So with other officers, whose election by the people is provided for; their *terms of office* are in every case limited and fixed to some prescribed period, either *two, four, six* or *ten* years, at the expiration of which, or when, in other words, a *vacancy* occurred in an office by *efflux of time*, the people were to *fill* it by a new election, and the officer so elected holds for the same prescribed constitutional term.

In case of a vacancy in an office by any *other mode* than by efflux of time, provision is made for *filling such vacancy* sometimes by a temporary appointment until the general election, and sometimes by an executive appointment for the residue of the constitutional term. It is in this latter *sense* that the word *vacancy* is *invariably* used in the constitution. In every instance it means that *portion of the constitutional term of office* which is left *vacant* by the death, resignation, removal or other disqualification of the party elected for the prescribed term. It is this which is meant by the word *vacancy*, as used in the constitution, and when *such vacancy is filled*, either by an executive appointment or a *new election*, it is for this unexpired term of office. Such is the case with every officer except that of judge, in which case, by the *express provision* of the 25th section of article 4, the party elected to fill a vacancy in that office, "shall hold the said *office for ten years*, according to the provisions of this constitution;" thus clearly showing that where the filling of a vacancy was to continue longer than for the unexpired term, the framers of the constitution were *careful* so to provide, in unequivocal language. In all other cases the vacancy is to be filled for the residue of the term only, sometimes by *express provision* to that effect, as in the case of *State's Attorneys*, (art. 5, sec. 5,) and *wreck-master*, (art. 7, sec. 11,) and sometimes by *necessary implication*, from the fact that the elections are to take *place every two, four* or *six years*. The present case of clerk comes under this last head. By the section under consideration, the clerk is to be

elected for six years, and until a *new election is held,* and he is *re-eligible* to the office. This implies that there are to be *new elections* after the expiration of the six years. But by the 24th section of the same article, it is provided, that the *"first* election for judges, *clerks,* &c., shall take place, *throughout the State,* on the first Wednesday of November 1851." Can there be a doubt that, taking these two sections together, it was the design of the framers of the constitution that there should be a *new election* for clerks, *throughout the State,* on the first Wednesday of November 1857, and so every six years *thereafter,* so long as the constitution shall continue in existence? Have they not in *effect said* so, as plainly as if they had said in this, as they have in some other cases, that the election shall take place *every* six years?

It is conceded that if the section had said, that "in case of a vacancy in the office of a clerk, the judge or judges of the court of which he was clerk, shall have power to appoint a clerk to *fill such vacancy,*" that the appointee would hold only for the *unexpired term.* Why? Because the word *vacancy* would then mean only the unexpired constitutional term of office. But how is the *meaning of this word* changed by the fact that the *people* are to *fill the vacancy,* instead of the judge? It is surely just as competent for the constitution to *limit* and *restrict* the effect of an *election* by the *people,* as it is to do so in case of an *appointment* by a judge. Why, in the one case, should *vacancy* mean an entirely different thing from what it does in the other?

But, again, our construction is sanctioned by the great and controling policy of the *instrument* to preserve *uniformity* in elections to all offices, and to avoid *special elections* in different counties at different times. 2 *Vol. of Debates,* 486, 700. It was designed that the elections for all officers should be *uniform* throughout the State. The harmony of the system would be invaded by the opposite construction; for under it you will have a clerk in one county whose office will expire at a different period from that of others, and, in course of time, there may be clerks in no two counties whose terms of office will expire at the same time. This will give rise to special elections in

different counties, which was the very thing the framers of the constitution were careful to guard against in every instance, except that of judges.

Finally, that ours is the sense in which the people who adopted the constitution understood this section, is manifest from the fact that the *people* of the county nominated candidates, held an election, voted for, and elected the appellant to this office on the first Wednesday of November 1857. It is also further manifest from the fact that the executive, whose duty it is to issue commissions to these officers, gave a commission to the appellee *"to hold said office until he should be discharged therefrom,"* &c., whilst that to the appellant is "to hold said office of clerk *for six years from the time of his election,* or until he should be discharged therefrom," &c., that the governor understood and interpreted the section in question as we do.

We, therefore, insist that the appellee was entitled to hold the office, by virtue of his election, on the 5th of November 1855, only for the residue of the *constitutional term of six years,* made vacant by the death of Mr. Norfolk, and that the election of the appellant, on the 4th of November 1857, was constitutional and valid, and he is entitled to the writ applied for in this case.

*Daniel Clarke* and *Thomas G. Pratt* for the appellee.

This case is governed by the true construction of the 14th section of the 4th article of the constitution. This section establishes:—1st. The office. 2nd. The mode of appointment. 3rd. The *term* of office. 4th. Provides for removal for certain causes on conviction in a court of law. And 5th. Fixes in its last clause the *mode* and *time* of filling vacancies in the office. Section 16th of article 4, prescribes the powers and duties of the officer.

It is insisted, that the *term* of office being fixed by the first clause of the 14th section, at "six years from the time of election, and until a new election is held," *every* clerk elected by the people holds his office for *that term,* unless the last clause of the section can be construed as imposing a limitation upon

Sansbury *vs.* Middleton.

the term of a clerk elected to fill a *vacancy,* and restricts it to the residue of the term of the former incumbent. Does the last clause so limit the term of office?

To arrive at the exact meaning of this clause, we propose to make several inquiries. What is an office? What is a *vacancy* in an office? What is the meaning, *ex vi termini,* at common law, of "vacancy?" Has "vacancy" when used at common law relation to the *office* or to the *term of office?* An office is "a *right* to exercise a public or private employment, and to take the fees and emoluments thereunto belonging," or it is "that *function* by virtue of which a man hath some employment in the affairs of another." 2 *Bl. Com.,* 36. 2 *Burrill Law Dict. Title Office.* 20 *Johns.,* 493. 2 *Jacob Law Dict., Title Office.*

Offices are divided into *public* and *private.* The *office,* which is thus defined, and is the *principal,* must be distinguished from its mere *incidents,* which are:

1st. Tenure; the manner of holding.

2nd. Powers and duties which are fixed by the law creating the office, or added subsequently, or attached to the office by prescription.

3rd. Term; the period of holding, or the *estate* which the incumbent takes. 4th. Emoluments and fees, which constitute the compensation for the service rendered.

A vacancy exists in an office whenever the office is not filled, when it is destitute of an incumbent, and there is no officer to officiate and exercise the right and function. Reason alone would conclude, that when the *right,* which is the *office,* ceased to exist so far as the incumbent is concerned, being the *principal,* all the incidents which attached to the office of the incumbent must end.

At common law the King was the universal officer, the source of all power, and the disposer of offices. 2 *Jacob's Law Dict., Title King. Public* offices were granted by the King for life conditioned on good behavior, or *durante bene placito,* and no *public* office could be granted for years or a term. 2 *Jacob Law Dict., Title Office.* 9 *Coke,* 97. A vacancy might occur in a *public* office, or the office might cease

39    v. 11

to be filled, by the King's withdrawing his good pleasure, which in some cases was the tenure, by death, by resignation, by abuser, by non-user, by refusal, or by the acceptance of an office incompatible with the one first held.   These constitute all the modes in which vacancies could arise at common law. Abuser, non-user, and refusal, worked a *forfeiture* of the office to the King, and upon the occurrence of the other contingencies the office *reverted* to the King.   A vacancy in the term of office of a *public* officer could not exist therefore at common law, there being no term attached to the office, and *vacancy, ex vi termini*, could only mean vacancy in the office.   See *People vs. Green, 2 Wend.*, 266.

In this country, written constitutions exist in all of the States, and they can change the rule of the common law which made estates for years descend, which was one of the reasons why *public* offices could not be granted for years.   By the provisions of the constitutions of most of our States, public offices are granted for a term of years, and they are generally elective.   3 *Kent.*, 454.   But it is never held that the officer takes an estate in them, which attaches to him after he has ceased to be officer, or that the estate descends to his executor.   The *term* for which the office is conferred is the estate which the officer takes.   2 *Bl. Com.*, 144.   Whenever death, or resignation, or removal for malfeasance, may take place, the estate ceases, the term is gone, and the office reverts, as at common law to the *King*, so here, to the sovereign people, or to the appointing power, which the people by constitutional provision may constitute.   When filled the constitution may limit the term of the new incumbent to the residue of the unexpired term of the former incumbent, by either *express* provision or *clear* and *manifest intent*.   But vacancy, *ex vi termini*, at common law, meaning vacancy in the office and not in the *term*, in construing the constitutions of the different States, the common law acceptation must be given to them, in the absence of an *express* provision to the contrary, or a *clear intent* manifested either by the context or the general policy of the constitution, that it should receive a *different* meaning, and here, under our constitution, we insist, that every vacancy in

the office of clerk, throws back upon the people the right to fill the office, and when so filled the person elected will have the right to hold for the constitutional period of six years. *Dwarris on Statutes*, 43. *Hughes vs. Buckingham*, 5 *Sm. & Mar.*, 632. *Banton vs. Wilson*, 4 *Texas*, 400. *People vs. Green*, 2 *Wend.*, 266. *People vs. Coutant*, 11 *Wend.*, 132, 511. *State vs. Hutson*, 1 *McCord*, 240. *State vs. Mc-Clintock*, 1 *McCord*, 245. *Powers vs. Hurst*, 2 *Humph. (Tenn. Rep.,)* 24. *Brewer vs. Davis*, 9 *Hump.*, 208. When vacancy, even in its common acceptation, may refer either to the office or the term, no one can affirm that the last clause of this 14th section, is an express provision that the clerk elected to fill "such vacancy," shall hold only for the residue of the term. The clause first speaks of vacancy in the office, and says, a clerk shall be elected to fill "such vacancy." The "such vacancy," must have relation to something which has preceded, viz., "vacancy in the office," and hence the constitution itself, in this very clause, shows in what sense vacancy was used. The principle of construction however, established by the preceding authorities, is conclusive in favor of the appellee's right.

The intention of the last clause, was not to restrict the effect of the exercise of their constitutional right of election by the people, to a less period than that prescribed by the first clause, namely six years, but was inserted in the constitution to prevent the necessity of an earlier election to fill the office, than that regularly to be held for the election of delegates, and for that reason gave the judge the power to appoint until the next general election of delegates, and then prescribes the time when the election shall be held, to fill the vacant office which had reverted to the people. See *Proceedings of Convention,* 2 *Vol.*, 700.

What reason can be adduced, why an election by the people at one time, should entitle the incumbent to hold for one term, and at another time for another and different term? Why was not the sovereign power, the people, just as competent on November 7th, 1855, to elect a clerk for six years, as on November 5th, 1851, or November 4th, 1857? No reason

can be advanced why, the appointing power being the same in each case, the term should differ. Each appointment by election is an expression of the will of the people, and the same consequences should attach in every case where that sovereign power has been exercised.

But it has been argued, that in construing any portion of the constitution, the whole instrument must be considered together, and its general intent and policy must control the meaning of a particular clause or section, *(Manly vs. State, 7 Md. Rep.,* 135; *State vs. Mace, 5 Md. Rep.,* 337,) that it was the policy of the constitution to establish a uniform system of elections, and to vacate at one and the same time, either every two, four or six years, as the case may be, throughout the whole State all offices of the same character, and to hold that the appellee was elected for six years, from November 7th, 1855, would destroy the harmony of that system which the constitution contemplated establishing. We deny that the constitution, considered in all its parts, manifests such an intent or general policy.

The clauses of the constitution applicable to the various officers and their terms, may be divided into four classes.

Class first. In which the term of office is fixed, provision is made for filling vacancies, and the provision expressly limits the term of office to the *residue of the unexpired term.* Art. 2nd, sections 1, 7, (Governor.) Art. 3rd, sections 2, 4, 29, (Senators and Delegates.) Art. 4th, sections 17, 26, (Judges of the Orphans courts.) Art. 4th, section 19, (Justices and Constables.) Art. 5th, sections 1, 5, (State's Attorney.) Art. 6th, section 1, (Comptroller and Treasurer.) Art. 7th, section 3, (Commissioners of Public Works.) Art. 7th, section 10, (Surveyor.) Art. 7th, section 11, (Wreckmaster.)

Class second. Where the term is fixed, a provision exists for filling the office in case of vacancies, and when filled that it shall be for the full term. Art. 4th, sections 4, 9, 25, (Judges.)

Class third. In which the term is fixed, and no provision is made for filling vacancies. Art. 4th, section 3, (Clerk of Court

of Appeals.)   Art. 7th, section 4, (Lottery Commissioners.)
Art. 7th, section 6, (Commissioner of Land Office.)   Art.
7th, section 7, (Librarian.)   *Marshall vs. Harwood, 5 Md.
Rep.*, 423.   Art. 7th, section 8, (County Commissioners.)

Class fourth.  Art. 4th, section 14, (Clerks.)   And Art. 4th,
section 18, (Registers.)   In which the provisions are identical.

The constitution shows, that when its object was to limit
the term of an officer, appointed or elected by the people to
fill a vacancy to the *residue* of the *unexpired* term, it knew
well how to express that intent, in clear and unambiguous
words, and its failure so to limit the term by express provision
in the other three classes of officers, negatives the presumption
of such an intent.  *Expressio unius, est exclusio alterius.*
The appellee's construction of the constitution, does not create
special elections or alter the day of election as fixed by the
constitution.

The provision in regard to most of the officers in the first
class, must be accounted for by other considerations than the
establishment of a general *policy*, to confine the term of offi-
cers chosen to fill vacancies to the residue of the *unexpired
term*.  The Governor elected by the Legislature to fill a va-
cancy, serves only for the residue of the term, because other-
wise the system of gubernatorial districts would be deranged.
The Senator elected to fill a vacancy, if he served for the full
term, would be transferred from one class to another, and so
the classification would be defeated.  The policy of districts,
applies to the case of commissioners of public works.  Judges
of the orphans courts, justices and constables, comptroller and
treasurer, surveyor and wreckmaster, are not elected by the
people in case of a vacancy, but are appointed by some other
power, and so do not conflict with the position contended for,
that when a *vacancy* is filled by the people it is for the consti-
tutional term.  The State's Attorney is elected by the people,
in case of a vacancy, and holds only for the residue of the un-
expired term by express provision.  If the same rule had been
intended to be applied to clerks and registers, why was not
the express provision introduced in their case, as in that of
State's Attorney?  The form of the commission cannot affect

the term of office of the appellee. The commission is the mere *evidence* of the appointment, and the election the *essence*. The commission however is so worded, as carefully to avoid any executive interpretation of the last clause of section 14th, art. 4. *Marbury vs. Madison*, 1 *Cranch*, 157. *Johnston vs. Wilson*, 2 *New Hamp.*, 202. *Jeter vs. State*, 1 *McCord*, 233. *State vs. Lyles*, 1 *McCord*, 238. *Hill vs. State*, 1 *Ala.*, 559. *Wammack vs. Holloway*, 2 *Ala.*, 31. *Low vs. Towns*, 8 *Georgia*, 360.

But if the appellee was only elected to fill the vacancy for the residue of the unexpired term, he is entitled to hold the office until a successor is constitutionally elected and qualified. The constitution contains no provision fixing the time when any election of clerks shall be held, except article 4th, section 24, which only appoints the time when the first election shall be held.

It is not denied, that the constitution contemplated subsequent elections of clerks, &c. By article 10, section 6, the Legislature shall have power to *regulate, by law, all matters* which relate to the judges, time, place and manner of holding elections in this State, and of making returns thereof. The constitution fixes the time of the first election, and why was this power conferred upon the Legislature, unless the constitution contemplated that some further action on the part of the Legislature would be necessary in relation to subsequent elections? Under this section, the Legislature could not change the day of election from the first Wednesday in November, but they could make provision for its being legally, in all respects, held upon that day. No legal notice was given by the sheriff, because by article 10, section 9, he has only power "to give notice of the several elections *authorized by this constitution*." Courts are constituted to interpret not to make constitutions, and mere considerations of inconvenience must not override wise rules of constitutional interpretation. Where a time is fixed for doing an act by the constitution, and no other time is fixed, the act can only be done at the specified time. *Opinions of the Justices, 6 Shepley, 459.* The Legislature can apply the remedy. But if the constitution confers authority by impli-

cation, to hold elections, it is only in those cases where the office is vacant at the time the election is held. Mr. Norfolk's term would not have expired until the 5th of November 1857, and the appellee filled the office therefore when the appellant was elected on the 4th of November 1857. The six years fixed as the term of office of clerks, in the 14th section, of the 4th article, does not mean from the first Wednesday in November until the first Wednesday in November, six years thereafter. It provides that the clerk shall hold for "the term of six years from the time of his election, *and until a new election is held.*" Why were the words, "*until a new election is held,*" added, if the constitution intended the six years should mean until the first Wednesday in November, six years thereafter? They would be surplussage. The clerk is to hold for six years from the time of his election, and the words, "*until a new election is held,*" were inserted to cover those cases where the first Wednesday in November should fall upon some day of the month subsequent to the expiration of six years from the time of his election.

It is competent for the Legislature to provide, that an election to fill an office, not vacant at the time, shall be valid, and that the person so elected shall enter upon the office when the former term has expired, and the office becomes *vacant.*

In the case of *Marshall vs. Harwood,* 5 *Md. Rep.,* 423, the Court of Appeals decided, that the election of Marshall before the expiration of Harwood's term, was valid, and that he would enter upon the office when Harwood's term expired. But we insist, that the election of Marshall by the Legislature, in pursuance of a joint resolution, was equivalent to an act declaring such election valid; a power which is not denied to the Legislature. But in this case no action on the part of the Legislature is shown, and we submit, that an appointment or election to fill an office in which no vacancy exists at the time, independent of constitutional or legislative provision, is a nullity and void. *Watkins vs. Watkins,* 2 *Md. Rep.,* 341, 11 *Wend.,* 132, 511, *People vs. Coutant.* 3 *J. J. Marshall,* 401, *Taylor vs. Commonwealth.* 7 *Wend.,* 493, *People vs. Brown.*

BARTOL, J., delivered the opinion of this court.

This is an appeal from an order of the court below, refusing an application of the appellant, for a *mandamus* to compel the appellee to surrender to him the office of clerk of the circuit court for Prince George's county.

The record shows, that on the 5th day of November 1851, Owen Norfolk was elected to said office; he died on the 24th day of November 1854, and, in pursuance of the 14th section of the 4th article of the constitution, Edward W. Belt was, by the judge of said court, appointed clerk *"until the general election of delegates held next thereafter."* At said election, held on the 7th day of November 1855, the appellee, Charles Middleton, was elected by the people to said office, and being duly commissioned and qualified, entered upon the discharge of the duties of the office, which duties he has continued ever since to discharge, and is now in possession of said office.

It further appears, that, at the general election of delegates, held on the 4th day of November 1857, the appellant became a candidate for said office, and having received a majority of the votes at said election, was commissioned by the governor, and has duly qualified.

Upon this statement of facts, the question presented for the decision of this court is, whether the appellee is entitled to hold the office of clerk, by virtue of his election in November 1855, for *"the term of six years from the time of his election, and until a new election is held;"* or only for the residue of the original term of six years, for which Owen Norfolk was elected in November 1851? The determination of this question depends upon the true construction of the 14th section of the 4th article of the constitution.

That section, so far as it is material to this question, is in these words: "There shall be in each county a clerk of the circuit court, who shall be elected by the qualified voters of each county, and the person receiving the greatest number of votes, shall be declared and returned duly elected clerk of said circuit court for the said county, and shall hold his office for the term of six years from the time of his election, and until a new election is held." ✳ ✳ ✳ ✳ ✳

Sansbury *vs.* Middleton.

"In case of a vacancy in the office of a clerk, the judge or judges of the court of which he was clerk, shall have the power to appoint a clerk until the general election of delegates held next thereafter, when a clerk shall be elected to fill such vacancy."

By the express words of the first clause of this section, the term of office of a clerk to be elected by the people, is declared to be "*six years from the time of his election, and until a new election is held.*" This applies not merely to the officer chosen at the first election, but to every one who is legally elected by the people afterwards; and is conclusive of the question before us, unless there be something found in the same section, or in some other part of the constitution, which limits the term of such officer.

This limitation, it has been contended, is to be found in the latter clause of the section which provides for a case of vacancy in the office, and after authorizing a temporary appointment by the court, to continue till the next general election of delegates, directs that a clerk shall then be elected "to fill such vacancy." The argument on the part of the appellant, is, that the use of the term vacancy, necessarily supposes an unexpired term; and that to fill such vacancy, without other words, imports the filling of the office for the residue of such term. This construction is not warranted either by the words of the section, or by any general and prevailing intent, to be discovered in any other part of the constitution.

It is true that the word *vacancy*, when used in written constitutions with reference to a public officer, sometimes signifies *an unexpired term;* but that is not necessarily so. It often relates merely to the office, without reference to the term; and, in this case, the very words of the section under consideration, so limit and define it. The case provided for, is a vacancy *in the office of clerk,* and the election is to fill *such vacancy.* What vacancy? Clearly in the *office,* not in the *term.*

The correctness of this construction, sufficiently obvious from the words of the section itself, is placed beyond all doubt or difficulty, when we examine the other parts of the constitution. Wherever provision is made for filling a vacancy in an

office, for the residue of an unexpired term only, appropriate words are used to express that intention, and the absence of any such words in the latter clause of the 14th section of the 4th article, is a plain indication of the intention of the framers of the instrument, that whenever a vacancy in the office of clerk is filled by a popular election, the person so elected shall hold for the whole term of six years, as fixed in the constitution. This view is sanctioned by precedent and authority. In the constitution of New York was the following clause: "Sheriffs and clerks of counties, including the register and clerk of the city and county of New York, shall be chosen by the electors of the respective counties once in every three years, and as often as vacancies shall happen: and the governor may remove any such sheriff, clerk, or register, at any time within the three years for which he shall be elected," &c.

Under this clause a sheriff was elected to fill a vacancy, and the supreme court of New York decided that the sheriff so elected held for the full term of three years. *The People vs. Green*, 2 *Wend.*, 266. In that case, as in this, it was argued that the election to fill a vacancy necessarily imported a tenure for an unexpired term. But the Hon. Wm. L. Marcy, then judge, who delivered the opinion of the court, uses the following language: "Green was elected, as I understand the provision, to fill the vacant office, and not merely to serve out the vacant term of his predecessor. I am inclined to think that a diversity of opinion on this subject has arisen from the different applications of the term 'vacancies,' in the section of the constitution which we are considering. It has been sometimes applied to the office as contradistinguished from the term of service, and at others to the term of the office. I understand it is applicable to the office alone. When Green came into the office, he took it with all the rights, powers and incidents belonging to it, under any circumstances, one of which was a tenure of three years."

That case is very analogous to the one before us, and the language of the learned judge, which we have quoted, applies with equal force to this case as to the one which he was deciding.

The same provision of the constitution of New York was again brought before the courts of that State for consideration, in the case of *The People vs. Coutant*, 11 *Wend.*, 132. It was a controversy involving the tenure of office of the register of the city and county of New York, elected to fill a vacancy. The supreme court, Savage, Chief Justice, delivering the opinion, adhered to the same construction of the constitutional provision. This last case was taken, by appeal, to the court of errors, and after full argument and mature consideration, was affirmed, Chancellor Walworth delivering an able and lucid opinion. 11 *Wend.*, 511. With reference to that case it may be remarked, that the tenure or term of office of the register was not defined in express language by the constitution, but the court determined that by implication it was a term for three years; which determination, while it governed their decision of the question involved, assimilates the case to this, except that here the official term of the clerk is declared, by express words, to be *for six years*.

In the case of *Hughes vs. Buckingham*, decided by the high court of errors and appeals of Mississippi, 5 *Sm. & Mar.*, 632, it was held, that the clerk of the superior court of chancery, chosen to fill a vacancy, was entitled to hold the office for the whole term of four years, that having been fixed, by a general law of the State, as the term of all offices not otherwise provided for.

By the constitution of Tennessee, art. 7, sec. 1, it was provided, "That there shall be elected in each county, by the qualified voters therein, one sheriff, one trustee, and one register; the sheriff and trustee for two years, and the register for four years." In the 2nd section it was provided, that "Should a vacancy occur, subsequent to the election, in the office of sheriff, trustee, or register, it shall be filled by the justices, * * * * * and the person so appointed shall continue in office until his successor shall be elected and qualified; and such office shall be filled, by the qualified voters, at the first election for any of the county officers."

Under that provision Evans was elected register in 1836, died on the 4th of April 1837, when Hurst was appointed, by

the justices, to fill the vacancy in the office of register, and at the first election of county officers thereafter, on the 3rd day of March 1838, was elected by the people. Afterwards, in 1840, at the expiration of the term of four years for which Evans had been elected, Powers was elected, and claimed the office. But the supreme court decided that Hurst was entitled to hold the office for the whole term of four years. 2 *Humph. Rep.*, 24, *Powers vs. Hurst.*

In the case of *Banton vs. Wilson,* 4 *Texas*, 400, it was decided by the supreme court, Hemphill, C. J., delivering the opinion, that where the tenure of an office is fixed, by the constitution, at four years, each succeeding incumbent, although elected to fill a vacancy, is entitled, unless it be otherwise provided in the constitution itself, to hold the office for the full period.

These decisions, by distinguished jurists in other States, of cases analogous to the one before us, are strong authorities in support of the views which we have already presented, and sustain the conclusions at which we have arrived from an examination of the provisions of our own constitution, governing the subject. These conclusions are not in conflict with any general or prevailing intent to be found in the instrument, nor are we able to perceive any mischievous consequences or public inconvenience to result from such an interpretation.

It is manifest that the prominent designs of the framers of the constitution were to make the office of clerk, and almost all others, *elective*, to limit their tenure, and to avoid the necessity for special elections. These designs are all gratified by the construction which we have adopted. The order and harmony of the system is in no respect disturbed. There is nowhere to be found any expression of a purpose that an election for a clerk shall be held at the end of every six years, in all the counties of the State; nor can we perceive any good end that could be subserved by such an interpretation. The plain intent of the 14th section, is to direct that a vacancy shall be filled temporarily by the court, till the general election, and then that the office shall be filled, by an election, for the constitutional term. The power of the people, at a general elec-

tion, to fill the office whenever it becomes vacant, either by the efflux of time or by other cause, is clearly conferred by the constitution.

In other parts of the constitution provision is made for filling various offices, by election, at regular stated periods of two or four years. In such case appropriate words are used to express such intention. This is the case with the judges of the orphans courts, *art.* 4, *sec.* 17, which directs that elections for those officers shall be held in every fourth year, in each county and in the city of Baltimore. When a vacancy in that office occurs, it is filled, under the 26th section of the same article, necessarily for the residue of the term only, although not so expressly declared; because the 26th section must be construed in connection with the 17th section. But no such provision as that contained in the 17th section, is to be found with reference to the office of clerk.

Being of opinion that Middleton, the appellee, is entitled to hold the office for the whole constitutional term, from the time of his election in 1855, and that the election of the appellant, in 1857, was unwarranted by the constitution, and void, we affirm the judgment.

*Judgment affirmed.*