THE BRICK COMPANY OF BALTIMORE CITY and ROBERT
RIDDELL BROWN and DAVID STEWART, Trustees *vs.*
JOSEPH J. ROBINSON, SR.

*Injunction Restraining Sale of Property (advertised Free of*
*Incumbrances) by a Junior Mortgagee—Receivers.*

A. and J. M. had a vendor's lien for unpaid purchase money on land
in Baltimore County, sold by them in 1877 to the B. Co., which
land the Company held under a bond of conveyance from the M.
To enforce their lien the M. in February, 1880, instituted proceedings
in equity, making all incumbrancers parties. In December, 1878,
R. filed a mechanic's lien against buildings and fixtures on the
land. He obtained judgment in February, 1880, on notes, for the
amount of his lien in the Baltimore City Court, on which he issued
execution, on the 8th July, 1880, to Baltimore County, to obtain
a lien on the personal property of the B. Co.; he also instituted pro-
ceedings on his mechanic's lien claim to sell the property bound
by it. On the 8th March, 1879, the B. Co. executed a mortgage to
P. and H. of the land and of its machinery, &c., and personal
property. On the 24th March, 1879, the B. Co. executed another
mortgage of the land and another of the machinery, &c., and per-
sonal property to B. and S., trustees. B. and S., trustees, under
the powers in the mortgages to them, advertised all the property
of the B. Co. for sale on the 12th July, 1880, free from all incum-
brances, and to give possession to purchasers. R. on the same day
applied to the Circuit Court for Baltimore County, wherein the
proceedings of the M. and of R. were pending, for an injunction
to restrain B. and S., trustees, from selling, and for the appoint-
ment of receivers of the B. Co. The Court, on the bill and ex-
hibits, granted the injunction and appointed receivers. HELD :

That the injunction was properly granted, as to the personal property;
and that as to the real estate, B. and S., trustees, should be re-
stricted to selling their equitable interest in the real estate subject
to the prior liens; but that the appointment of receivers was pre-
mature.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court. The bond of conveyance therein mentioned was executed on the 1st September, 1877; the proceedings on their vendor's lien were instituted by the Mandersons on the 27th February, 1880. Robinson obtained his judgment on the 12th February, 1880. Brown and Stewart, trustees, advertised the property of the Brick Company for sale on the 12th July, 1880, and on the same day Robinson applied for and obtained the injunction restraining the sale, and the appointment of receivers to take charge of the property of the Brick Company.

The cause was argued before BARTOL, C. J., ALVEY, ROBINSON and IRVING, J.

*Robert Riddell Brown* and *David Stewart,* for the appellants.

*L. H. Robinson* and *Albert Ritchie,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The questions for our decision, in this case, may be resolved into two: *First.* Does the appellee's bill of complaint, which was filed in the Circuit Court for Baltimore County, present a case for injunction such as was issued by that Court: and *secondly.* Was the order appointing receivers justified by the case made by the bill, on the filing of which the Court immediately passed the order for injunction and appointing receivers.

The bill alleges that the Brick Company of Baltimore City (one of the appellants) is indebted to the complainant in the sum of $2614.42, with interest, upon a mechanic's lien duly filed in the office of the Clerk of the Circuit Court for Baltimore County, on the third day of December, 1878, a copy of which lien is filed: That the Brick

Company's title to the real estate rests on a bond of conveyance from Andrew Manderson and James Manderson, who have a claim against the same for purchase money, amounting to twenty-five thousand dollars, to secure which they hold a vendor's lien which is superior to complainant's mechanic's lien; and that to enforce the same the Mandersons have instituted proceedings in equity in the same Court wherein this suit is instituted, not only against the Brick Company, but also against all junior incumbrancers, all of whom are made parties, which proceedings were still pending at the filing of this bill. A copy of the bond of conveyance is filed as an exhibit, and complainant refers to the other bill and proceedings in same Court, and prays to make them a part of his bill. It also alleges that on the 8th of March, 1879, the Brick Company executed a mortgage of the real estate belonging to it, and of its engines, machines, machinery, fixtures, patents and patent rights to Poole & Hunt, to secure $7900 due that firm; all of which is unpaid and unsatisfied. A copy of this mortgage is also filed as an exhibit. It also charges that on the 24th of March, 1879, the Brick Company executed a second mortgage on the real estate, and second mortgage on the engines and personal property to the appellants, (Robert Riddell Brown and David Stewart) trustees, to secure the payment of the claims of sundry *cestuis que trust* mentioned in these two mortgages, and that in these last mentioned mortgages there was a power of sale given to the trustees to sell in case of default on the part of the mortgagors. The principal of the claims secured by these mortgages was payable five years from date, but the interest on all was payable semi-annually. Copies of these mortgages, duly acknowledged and recorded, were filed as exhibits. It is also charged in the bill that the complainant's mechanic's lien has priority over all these mortgages and liens, except the lien for purchase money, and that in addition to the mechanic's

lien the complainant had notes for his claim upon which he had obtained judgment in the Baltimore City Court for $2774.83, upon which, on the 8th of July, 1880, an execution issued to Baltimore County, and that, by virtue of this judgment and execution, the complainant had acquired a lien on all the property of the Brick Company situated in Baltimore County, and that, on his mechanic's lien claim, he had instituted suit in this Court, to the September Term, 1879, to secure a sale of the property bound by his mechanic's lien, and prays leave to refer to this suit and proceedings and make the same a part of his bill.

The bill then charges, that notwithstanding the pendency of all these suits to affect the property, and to secure the sale thereof, and notwithstanding all these prior liens resting on the same, the appellants, Robert Riddell Brown and David Stewart, trustees, under the mortgages to them, and pretending to act under the authority of those mortgages, and without any other authority, or consent of any of the other lienholders had advertised to sell all the property of the Brick Company real and personal, and all its franchises, clear of incumbrances, at public auction, and unless restrained would sell all of said property, and that such sale would not only be without authority, but would lead to litigation, waste the property of the Company, hinder and delay the creditors of the Company, and jeopard and endanger the security of the complainant, and the other creditors ; whilst all the rights of all the parties can be fully secured through the suit of *Manderson, et al.*

A copy of the newspaper, containing the advertisement of sale, is filed as an exhibit.   The entire suspension of business by the Brick Company is alleged, and the utter insolvency of the concern.   The bill charges, that, the trustees, Brown and Stewart, are not in possession of any of the property proposed to be sold; nor are they entitled to possession, or to deliver possession thereof to a pur-

chaser; but it charges that with the assistance of a majority
of the directors of the Brick Company, who are themselves
*cestuis que trust* under the mortgage to them, they intend
to deliver the property, real and personal, to the several
purchasers thereof, and intend to take and receive the
entire proceeds of sale to the derogation of the rights of
the complainant; and, that the property and effects of
the company, already inadequate to the payment of all
the debts of the Brick Company, are in imminent danger
of being wholly lost to the complainant and other credi-
tors, unless taken into possession by the Court for the
benefit of the complainant and other creditors, who have
no remedy save in a Court of equity.

The prayer is for injunction, and that receivers may be
appointed, and for a sale of all the property to pay liens
according to priorities.    All parties in interest are made
defendants.    From this narrative it appears, that the
appellee had the first lien on the real estate of the Brick
Company, after the vendor's lien of Andrew and James
Manderson should be satisfied; and that through an
execution, which he had had issued upon his judgment,
recovered in Baltimore City, against the Brick Company,
he was seeking to obtain a lien on the personal effects of
that Company in Baltimore County, if he had not actually
acquired it as alleged in the bill.

The Brick Company had only an equitable title to the
real estate, the same being held by bond for the convey-
ance thereof on payment therefor, which conveyance was
not made because the purchase money was not all paid.
Upon that equitable title Poole & Hunt held the first
mortgage, (which was, in fact, the third lien in regular
order), and they held, also, the first mortgage on the
machinery, fixtures and patent rights of the Brick Com-
pany.    The title, therefore, which Brown and Stewart
took to the real estate was only the right to the equity of
redemption of the equitable estate of the Brick Company,

which equitable estate was subject to two liens having priority over even Poole & Hunt; and their mortgage title to the machines, machinery, fixtures and patent rights was only to the equity of redemption thereof. If there was any personal property not included in the mortgage to Poole & Hunt, on it they took the first lien. From this statement of facts, coupled with the averment of the bill, (which is supported also by affidavit,) that the appellants had no authority from any other source to make this sale, which they had advertised to make, except through the power in their mortgage, it is clear that they had no power or authority to make the sale in the manner proposed, viz., "free from all incumbrances," and to give rightful possession to the property, either real or personal, which they advertise they will do. Notwithstanding they are without lawful authority to do what by their notice of sale they propose to do, the appellants insist that the appellee has no right to complain and will not be injured by the sale proceeding. They insist that, according to his own showing in the bill, the appellee holds a lien on the real estate prior to the lien of the trustees, under which they sell or propose to sell, and that such sale could not defeat their claim or impair their right; but that it would remain unaffected. To sustain this view, we are cited to *Union Bank of Maryland vs. Poultney,* 8 *G. & J.,* 324; *Tome vs. Merchants' and Mechanics' Building and Loan Company,* 34 *Md.,* 12, and *Hardy vs. Smith,* 41 *Md.,* 1. We think the circumstances of this case clearly take it out of the reason and principle controlling the decisions of this Court in the cases cited. The fact that in this case the advertised purpose of these trustees was to sell an unincumbered title, distinguishes it from the cases to which we are referred. In the *Union Bank Case* the bill sought to restrain a sale under execution, in which it was only proposed to sell the equitable interest of the defendant, and the Court most properly said that

such sale would not prejudice his rights as prior incumbrancer. In *Tome's Case*, 34 *Md.*, 12, the applicant for injunction was refused the writ, because he was not a party to the proceedings under which the decree for sale sought to be enjoined, was passed; and he was not, therefore, in danger of loss; for there was no proposal to sell, discharged of his lien as prior mortgagee. The case of *Hardy vs. Smith*, 41 *Md.*, 1, was not a case of injunction, but presented a controversy for the distribution of proceeds of sale, and the Court held, that the unauthorized announcement, at the sale, by the trustee, that he was selling a clear title, had no effect to transfer any title, save that which the decree authorized to be sold, the other mortgagee not having been a. party to the proceedings.

The appellants, Stewart and Brown, the trustees, by their advertisement of sale, avowed their purpose to sell a clear title. As we have before said, the title in them was only the equity of redemption of an equitable estate, so far as the real estate was concerned. They were not selling, under a decree of the Court passed for the purpose of selling for the benefit of all lien-holders; but they were selling under the power contained in their mortgage, which was, in fact, the third lien in order.

The necessary inference, which the public would draw from their advertisement, would be, that, they had authority from the other lienors to so sell; which they had not. Such a sale, under such announcement, might have subjected the appellee to serious trouble and litigation, and ought to have been prevented by proper injunction. Notwithstanding the several proceedings alleged to be in progress in the Circuit Court for Baltimore County, the trustees might have sold the equitable interest of themselves and their *cestuis que trust* in the real estate, and the alienee thereof, *pendente lite*, would have taken subject to the rights of the prior incumbrancers, and would be bound by any decree that might be obtained for a sale of the

property under the proceedings pending ; but they should be confined by proper restraining order to selling only the equitable interest which they hold.   The lien-holders have a right to have the entire title sold by proper authority, that the estate may bring the largest possible sum for their common benefit.

With respect to the personal property, we think the injunction was properly granted.   The appellants, Stewart and Brown, trustees, by their mortgage, only acquired a lien on the equity of redemption thereof, unless there be some of which the bill and exhibits do not inform us. They were not entitled, under their mortgage, to the possession of the property, for a prior mortgage existed thereon.   They could not lawfully sell and deliver possession of that property ; for according to the allegations of the bill. to which we must look for the purposes of this decision, they had no authority whatever, except that derived from their mortgages, and were acting without the assent, and in defiance of the rights of prior lienholders.   The appellee, if he had not actually acquired his lien on the personal property, had issued his execution to Baltimore County, and was endeavoring to secure a right to payment from the surplus thereof, after satisfying prior liens.   Looking to the character of the trustees' title, they certainly should not be permitted to take possession thereof, and sell and deliver, and thereby scatter the property, to the prevention of the schedule thereof by the sheriff, and the utter defeat of the appellee's lawful efforts to obtain a lien, which could, in no way interfere with, or impair the lien of the trustees, Stewart and Brown.   It may be true, that until the complainant alleged and proved that the personal property was of uncertain value, and that the mortgagor had no other property than that which was mortgaged, to which complainant could resort; or that it was of value in excess of the liens prior to the complainant's, so that he would

27                         v. 55.

.be entitled to share in the surplus it might bring; he might not be entitled to a decree for its sale for his benefit. But by amendment of his allegations, and producing proof in the further progress of the cause, that difficulty may be entirely removed.

Meanwhile, the trustees, the appellants, who, so far as appears by the record, have no authority or right to sell and deliver the personal property, ought not to be permitted to sell as they proposed and advertised to do. Their action was unwarranted; and we think the complainant laid sufficient ground against them for enjoining the sale of personalty by them.

In appointing receivers, however, without waiting for the appellants to be heard in respect to the application, the Court erred. The circumstances of this case are not such as made it an exception to the rule, that "a receiver should not be appointed until after answer." In *Clark vs. Ridgely*, 1 *Md. Ch. Dec.*, 71, the CHANCELLOR says, "the grounds which will induce the Court to disregard this old rule must be strong and special." In *Blondheim vs. Moore*, 11 *Md.*, 374, Judge LE GRAND says, "the power is a delicate one, and is to be exercised with great circumspection. The Court must be satisfied by affidavit that a receiver is necessary to preserve the property. Fraud or imminent danger must be clearly proved, and unless the necessity be of the most stringent character, the Court will not appoint until the defendant be heard in response to the application."

From the averments of the bill we see no exigency requiring such haste, as the Court below thought necessary. The injunction would prevent the sale, and for the time being prevent the waste or loss of the property to the creditors. By it the rights of the appellee were sufficiently secured until the appellants could be allowed a hearing on that question and the injunction also.

The order granting the injunction, so far as it relates to the personal property, will be affirmed; so far as it

relates to the real estate, the order should be so modified as to restrict the trustees in selling, to a sale of their equitable interest in it only, and subject to all prior liens; so far as the order provides for receivers, and puts the property, real and personal, in their hands, the same is reversed as prematurely granted.

The cause will be remanded to the end that the order appealed from may be so modified as to conform to this decision.

*Affirmed in part, and*
*reversed in part, and*
*cause remanded.*