## STATE EX REL. BURDICK v. SCHNITGER, SECRETARY OF STATE.

Office and Officers—Term of District Judge Elected to Fill a Vacancy—Certificate of Election.

1. Since the enactment of Chapter 100, Laws of 1890-1891 (Rev. Stat. 1899, Sec. 195) there has been statutory authority for holding an election for district judge at any general election, when the office will become vacant by the expiration of a term subsequent to such election and prior to the next general election.

2. The provisions of Section 19, Article 5, of the Constitution, that in each judicial district there shall be elected at general elections one judge of the district court "whose term shall be six years succeeding his election and until his successor is duly qualified" applies with respect to the term of office as well to a judge elected at a general election to fill a casual vacancy as to one elected immediately preceding the expiration of the term of a previously elected incumbent.

3. The term of office of a district judge elected at a general election to fill a vacancy caused by resignation is six years from the first Monday in January succeeding his election and until his successor is duly qualified.

4. A continued popular construction, as well as the opinions of the Attorney General which have been acted upon by the officers of the State and respected by the people, may be considered, if necessary, as aiding the court in construing a provision of the Constitution, together with the statutes upon the subject.

(3)

5. Where, under the Constitution and statutes, a district judge elected at a general election is entitled to hold for the full term of six years, the fact that the certificate of election issued to him. recites that he was elected for the remainder of an unexpired term cannot operate to shorten his term.

[Decided June 23, 1908.]                    (96 Pac. 238.)

ORIGINAL proceeding in Mandamus.

The action was brought in the name of the State on the relation of Charles W. Burdick to require the respondent, William R. Schnitger, as Secretary of State, to issue notices at the time provided by law for the election of a district judge in each judicial district of the State. The facts are stated in the opinion.

*Watts & Dyer,* for the relator.

Section 19 of Article 5 of the Constitution provides the full term of six years to a district judge regularly elected for such term and is not to be construed as fixing such full term for a judge elected to fill a vacancy caused by resignation. The Legislature has construed the provision as applying only to one elected immediately preceding the expiration of a full term. (Rev. Stat. 1899, Sec. 201.) That section provides for an election for district judge in each judicial district in the year 1896 and every six years thereafter. There is no conflict between that section and Section 195. The Constitution provided for a term of six years and fixed the beginning of the term of office. Section 201 fixes the same time for the election of judges for a term of six years, and provides for the filling of a vacancy in such manner as might be thereafter enacted. Section 195 provides for an election of State officers, at any general election, and for an election to fill a vacancy in the office of district judge at any general election when such vacancy exists. Sexennial elections having been provided in the case of district judges, and general elections occurring every two years, there must be an election of a district judge at certain of said general elections because of the expir-

ation at such election of the sexennial period. Whenever there is a vacancy caused by death, resignation, removal or disqualification, there may, at any general election, be an election to fill such vacancy. The construction of the Constitution by the First Legislature in determining that district judges are to be elected at stated times for the period of six years, and that in case of a vacancy in the office at any time, there may be an election to fill the vacancy at any general election is entirely consistent with the constitutional provisions.

If the beginning and end of the terms of district judges have been fixed by the Constitution the rule governing the case is the one stated in 23 Ency. Law, 418, and adopted by this court in State ex rel. v. Brooks, 14 Wyo. 393. We believe that the beginning and end of such term are fixed by the Constitution and that, therefore, one elected district judge to fill a vacancy holds only for the remainder of the unexpired term.

The office of district judge is no more personal to the incumbent than the office of State Treasurer is personal to the incumbent of that office. The decision in State ex rel. v. Brooks, *supra,* holding that one elected State Treasurer to fill a vacancy holds only for the unexpired term of his predecessor is applicable to and must be held to govern the office of district judge.

*W. E. Mullen,* Attorney General, for respondent.

It was the intention of the Constitution to secure to the judiciary that larger degree of independence resulting from infrequent elections, and at the same time accord to the electorate the privilege of choosing elective officers at reasonable periods. (People v. Weller, 11 Cal. 86.) An elective judiciary with long terms being the policy of the Constitution it should be regarded as an important factor in the determining of this controversy. An election proclamation or certificate cannot change the law, much less the Constitution. (People v. Burbank, 12 Cal. 393.)

· The constitutional and statutory provisions considered in State ex rel. v. Brooks, 14 Wyo. 393, are clearly distinguishable from those involved in this case.   It is our contention that Section 19 of Article 5 contains a provision which removes the terms of district judges from the operation of Section 20, Article 21 (Schedule), in so far, at least, as to prevent such officers from being grouped in a uniform class, with a uniform time for an election to full constitutional terms.   The clause "until otherwise provided by law" in Section 19, Article 5, refers to such time as the Legislature shall otherwise provide by law for the division of the State into a different number of judicial districts.   It was inserted in the section as an amendment to conform it with the succeeding Section 20.   (Const. Debates, p. 494.) It seems reasonably clear that the terms of district judges, as fixed by the Constitution, independent of legislation, are six years from and after the first Monday in January succeeding their election, and until their successors in each case are duly qualified.   The Legislature can neither expressly nor inferentially shorten such terms nor otherwise contravene the provision of the Constitution requiring district judges to be elected at general elections for the term of six years.   (State ex rel. v. Thoman, 10 Kan. 191; People v. Perry, 79 Cal. 105; People v. Rosborough, 14 Cal. 180.)   The term "general elections" at which a district judge may be elected as used in Section 19, Article 5 of the Constitution, is not there used in a restrictive sense, that is as designating a particular general election, but in construing that provision one general election period cannot be given a preference over any other as a time for an election for the full six year term.   How, then, and by what right and authority, can the Legislature provide, even if it intended to do so, that district judges may be elected for full six year terms only at the general elections occurring sexennially?   We do not think that the Legislature has undertaken to do so by Section 201, R. S. 1899.   That

section may be construed as having been passed for the purpose of executing the provisions of the section of the Constitution above mentioned, and as a directory statute for observance by election officers. The last portion of the section provides that in case of a vacancy "for any cause whatever" such vacancy shall be filled at the election, "when such vacancy shall be required to be filled by law, or the Constitution of this State." This clause following the provision for sexennial elections seems to have been intended as an exception to the general rule for an election every sixth year. In other words, the provision for an election every sixth year after 1896 should not be understood as an inflexible rule prohibiting elections for district judges at other periods. The language "occurring for any cause whatever" is broad enough to include a vacancy occurring, or about to occur, by reason of the expiration of a full term. The statutory or constitutional provisions apparently conflicting should be harmonized if possible. (Slaymaker v. Phillips, 5 Wyo. 453.)

When are vacancies in the office of district judge required to be filled by law or the Constitution? In the case of *In re* Fourth Judicial District, 4 Wyo. 148, it was said that there is no special provision for filling a vacancy in the office of judge of the district court, but that Section 7 of Article 4 of the Constitution controls, viz.: "When any office from any cause becomes vacant, and no mode is provided by the Constitution or law for filling such vacancy, the Governor shall have the power to fill the same by appointment." (See also State ex rel. v. Henderson, 4 Wyo. 555.) Section 195, Revised Statutes 1899, was enacted after the provision now incorporated in Section 201 and is to be construed as providing the time for filling a vacancy in the office of judge "for any cause whatever," thus authorizing an election for a full term at any general election, since that would be a vacancy within the meaning of the words "for any cause whatever." If, however, there is any conflict between the

two Sections 195 and 201 the former must prevail for the reason that it was enacted and approved subsequent to the latter.

Although Section 26, Article 3 of the Constitution, requires that so much of a law as is revised, re-enacted or extended, shall be re-enacted and published at length, it is well settled under such a limitation that a statute repeals or operates as an amendment of a prior law upon the same subject to the extent that they are in conflict, although the latter is not mentioned in the former. (Scales v. State, 47 Ark. 481; Churchill v. Hill, 59 Ark. 54; Leep v. R. Co., 58 Ark. 407; People v. Mahaney, 13 Mich. 481; Lehman v. McBride, 15 O. St. 573; Shields v. Bennett, 8 W. Va. 74, 87; Baum v. Raphael, 57 Cal. 361; R. Co. v. Nestor, 10 Colo. 405; Evernham v. Hulitt, 45 N. J. L. 53; Sheridan v. Salem, 14 Ore. 328, 337; Davis v. State, 7 Md. 151; Cooley, Const. Lim. (6th Ed.), 182; 1 Thomp. Corp., Sec. 94, and cases cited.) The term of a district judge is personal to the incumbent. (Const., Art. 5, Sec. 19; Coutant v. People, 11 Wend. 512; People ex rel. v. Green, 2 Wend. 267; People v. Weller, 11 Cal. 86; People ex rel. v. Langdon, 8 Cal. 1; People ex rel. v. Garey, 6 Cowen 642; People ex rel. v. Cowles, 13 N. Y. 350; People v. Keeler, 17 N. Y. 370; Benton v. Watson, 4 Tex. 400; People ex rel. v. Weller, 11 Cal. 77; State v. Johns, 3 Ore. 538; People ex rel. v. Townsend, 102 N. Y. 430; State ex rel. v. Thoman, 10 Kan. 191; People v. DuBois, 23 Ill. 498; 23 Ency. L. 418; Opinion of the Justices, 61 Me. 601; Opinion of Justices, 16 Fla. 841; Sansbury v. Middleton, 11 Md. 296; Whipper v. Reid, 9 S. C. (9 Rich.) 5; Smith v. McConnell, 44 S. C. 491; Crowell v. Lambert, 9 Minn. 283.) The cases which apparently hold to the contrary are based upon peculiar constitutional provisions different from those found in this State. For example, the constitution of Colorado and South Dakota provide that the terms of all judges shall expire on the same day. (State v. Gardner,

(S. D.) 54 N. W. 606; In re Election, 11 Colo. 373.) And in Virginia the constitution authorizes the Legislature to fix judicial terms. (Burks v. Hinton, 77 Va. 1; Fitzpatrick v. Kirby, 81 Va. 467.) In the following cases the peculiar provisions of the Constitution affected the result: State v. Sorrells, 15 Ark. 664; People v. Carr, 86 N. Y. 512; State v. Taylor, 15 O. St. 137; State v. Ware, 13 Ore. 380. It is believed that a careful comparison of the sections of our Constitution relating to the terms of elective State officers and those of district judges will indicate an important distinction affecting the terms of persons elected to fill vacancies in either case, and that in view of the unbroken line of authorities above cited construing constitutional provisions making the term of officers personal to the incumbent, but one conclusion may be reached, and that is that a district judge in the State may be elected for a full term of six years at any general election period as defined by the Constitution and statutes.

*John W. Lacey, amicus curiae.*

The office of district judge is not a political one, and, therefore, no reason exists for changing the term of office to suit action at the polls. We are consequently not surprised to find that the term of office is six years, which would not fit in with the general change in the State administration, and which indicates the view of the framers of the Constitution, that there is no reason for frequent change growing out of the necessity for harmony with the administration period. Again, there sems to be no reason for changing all the district judges on the same day, but on the contrary, the reason is for stability and repose and for experience on the bench. Besides the judge must surrender his general practice, and also ambition for offices other than judicial. Taking all these matters and others that might be mentioned into consideration, they resulted in a provision in the Constitution that the term of office shall be six years. The facts in this case are within judicial no-

tice, and, therefore, the court is not bound by averments of the pleadings, but looks at the facts which it knows to have been the actual history of the judiciary and the judicial elections in the State. (State ex rel. v. Brooks, 14 Wyo. 318; 80 Pac. (Cal.) 1031.) Construction of the Constitution is to be resorted to only where its meaning is doubtful. It must be given effect according to its plain meaning. (9 Wheat. 88; 80 Pac. 643; 7 N. Y. 97.) District judges are to be elected at general elections. General elections are those which occur biennially in November. There is no authority to hold an election for judge except as contained in the Constitution and laws. (12 S. E. 1005.)

The people of three of the districts have elected judges at general elections other than those held at a sexennial period, thus indicating an interpretation by the people of Section 19, Article 5 of the Constitution. That interpretation has been recognized by the executive department and by the courts of the State. But the Constitution is plain, unambiguous and perfectly clear that when elected the judge shall hold his office for six years from and after the first Monday in January succeeding the election. (Const., Art. 5, Sec. 19.) The Constitution having fixed the term, the Legislature has no power to abridge it directly or indirectly. (People v. Perry, 79 Cal. 105; People v. Rosborough, 14 Cal. 181; People v. Garey, 6 Cow. 642; Howard v. State, 10 Ind. 99; Douglas v. State, 31 Ind. 429; Griebel v. State, 111 Ind. 369; Stadler v. Detroit, 13 Mich. 346; State v. Brady, 42 O. St. 504; Atty. Gen. v. Brunst, 3 Wis. 787; State v. Askew, 48 Ark. 82 (2 S. W.) 349; State v. Lylies, 1 McCord Law (S. C.) 238; State v. Police Comm'rs., 14 Mo. App. 297; 88 Mo. 144; Fant v. Gibbs, 54 Miss. 396; State v. Chapin, (Ind.) 11 N. E. 317; People v. Burbank, 12 Cal. 378; People v. Board, 19 N. Y. Supp. 625; Powers v. Hurst, 2 Hump. 24; Brower v. Davis, 9 Hump. 209.)

The case of State ex rel. Irvine v. Brooks, 14 Wyo. 493, does not state a contrary principle. The case here will be

found to come within the principle that "where the term of an elective office is fixed by the Constitution or statute, but without any time being established for its beginning or ending, a person elected to the office will be entitled to hold for the period established as the full term thereof, whether he was elected upon the happening of a casual vacancy or at the expiration of a complete term." (Opinion of Attorney General Fowler, p. 152; Opinion of Attorney General Van Orsdel, p. 93; 10 Kan. 191 (New Ed. 150.); 61 Maine, 601-602; 9 S. C. 6; 6 Ind. 497; 9 Minn. 268; 5 Md. 423; 11 Md. 313; 16 Fla. 842; 71 Vt. 200; 6 Tex. 400; 2 Wend. 267; 102 N. Y. 431; 103 S. W. 1044; 22 S. E. 721; 3 Wis. 787, 690; 40 Pac. 648; 6 O. St. 40; 42 O. St. 507; 9 Hump. 211; 2 Hump. 24.)

Section 201, Revised Statutes, 1899, with all its provisions construed together, does not definitely. fix for particular years the beginning and end of terms of the district judges, and this fact is emphasized by a construction of Section 195, nor could the statutes so provide in face of the Constitution giving to the judge a full term of six years. This full term is given whenever the election may occur, whether sexennially or otherwise. When a judge leaves the office for any cause, it returns absolutely to the electors of the district. There may be an intervening executive appointment, but the appointing power in such case does not possess full authority over the office. When the office is vacated by the incumbent, his successor occupies the office for six years regardless of the time served by the predecessor. This is so because the Constitution has placed no limit upon the power of the electors saving and excepting that whenever they attempt to fill the office they shall fill it for six years.

POTTER, CHIEF JUSTICE.

This is a proceeding by mandamus, brought originally in this court, to require the respondent, as Secretary of State, at the time prescribed by law for such action, to

issue notices to the several boards of county commissioners of the counties comprising the several judicial districts of the state, for the election of a judge of the district court in each of said districts for the term of six years, beginning on the first Monday in January, 1909. An alternative writ was issued, and the case has been heard upon a general demurrer to the petition and writ. The petition sets forth the facts respecting the present and past incumbency of the offices mentioned, and it is conceded that all the facts are thus sufficiently before the court to enable it to determine the cause upon its merits.

The duty sought to be commanded is that prescribed by section 206, Revised Statutes of 1899, which provides that between the first and fifteenth day of September in each year, in which a general election is to be held, the Secretary of State shall make out and cause to be delivered to the board of county commissioners of each county a written notice stating what officers, other than county and precinct officers, are to be elected at such general election and voted for in the several counties. In response to a communication from the relator inquiring as to the intention of the respondent respecting the giving of notice for the election of district judges at the general election to be held in November of the present year, the latter returned an official reply to the effect that according to the records of his office there will be a vacancy to be filled this year in the office of district judge for the first and second districts, respectively, and notices would be issued for an election in those districts, but that no vacancy will occur to be filled in the office of judge in either the third or fourth district, and no notice would be issued for an election of judge therein this year, unless otherwise directed by competent authority.

Although the respondent thus expressed a purpose of giving notice for the election of district judge in the first district, it is not here conceded that such election will be necessary or proper, but counsel for respondent, and the counsel who has appeared *amicus curiae,* contend to the

contrary, notwithstanding that, as shown by the records in the Secretary's office, the certificate of election, issued by the Governor to the present judge of that district following his election to the office at the general election held in 1906, recited that he had been elected for the remainder of the unexpired term of his predecessor, which period will expire the first Monday in January, 1909. And confessedly, upon the provisions of the constitution and statutes, the same question exists in relation to that district as in the case of the third and fourth districts.

No controversy is raised upon the facts as to the necessity for an election in the second district, that is to say, no such complication has arisen in that as in the other districts, and it is plain upon the facts alleged, as well as conceded, that an election should be held this year in the second district for the office of judge of the district court, and counsel for respondent concedes the duty to give the required notice thereof. The facts with reference to the three districts in question are as follows: In the first district at the first state election held September 11, 1890, Richard H. Scott was elected judge of the district court for a term of six years from the first Monday in January, 1891. He was again elected for a term of six years at the general election held in November, 1896, and again for a like term at the general election held in November, 1902, the term under his second election having begun the first Monday in January, 1897, and under his last election, the first Monday in January, 1903. While holding under said last election, he resigned the office on February 23, 1906, to accept an appointment as Justice of this court; and on February 24, 1906, Roderick N. Matson was appointed by the governor to fill the vacancy caused by such resignation. At the general election in November, 1906, Judge Matson was elected to the office, and the legality of that election is not questioned. As above stated, he received a certificate to the effect that he had been elected for an unexpired term ending the first Monday in January, 1909.

In the third district at the first state election, Jesse Knight was elected judge of the district court for a term of six years from the first Monday in January, 1891, and was again elected for a like term at the general election in 1896. On December 18, 1897, he resigned to accept an appointment as a justice of this court, and thereupon, on the same day, David H. Craig was appointed to fill said vacancy until his successor should be duly elected and qualified. At the next general election held in November, 1898, Judge Craig was elected to the office. The legality of that election is not denied, but there is a controversy respecting the term for which the election was held. He was again elected as his own successor at the general election in November, 1904, there having been no election for the office between 1898 and 1904. He is now holding and discharging the duties of the office.

The fourth district was established by the legislature by an act approved February 9, 1893. William S. Metz was thereupon appointed by the governor as judge of the district court of that district, and he was afterwards elected to the office at the following general election in November, 1894. No election for district judge in that district was held in 1896, but Judge Metz continued to occupy the office under his election in 1894 until February 27, 1897, when he resigned. The vacancy so caused was filled by the appointment of Joseph L. Stotts, until the election and qualification of his successor. At the general election in November, 1898, an election was held for district judge in the fourth district, and Judge Stotts was elected as his own successor, and held the office without any intervening election until the first Monday in January, 1905, when he was succeeded by the present incumbent, Carroll H. Parmelee, who had been elected at the last preceding general election held in November, 1904.

The elections respectively held for district judge in the third and fourth districts succeeding the appointments to fill the vacancies aforesaid, are alleged in the petition to have been held for the "purported" term of six years, but it is

further alleged that said elections should have been held
for the remainder of the unexpired term of the judge who
had resigned, the service of the incumbent under execu-
tive appointment not having in either case completed the
period for which his predecessor had been elected. It thus
appears that the elections aforesaid in the third and fourth
districts respectively, to fill the vacancies occasioned by
resignations, were assumed to have been held for the full
term of six years, not only by the judges who were elected
thereat, but also by the election officers of the state, since
no election for the office was held at either general elec-
tion immediately preceding the expiration of the period
for which the judge who resigned had been elected. It
is contended on the one hand that the election in 1906 in
the first district was for the remainder of the unexpired
term of Judge Scott, and on the other that it was for a
full term of six years.

There has been no change in the constitution, and, since
the first session of the State Legislature, no alteration in
the statutes respecting the election of district judges. The
general question therefore presented, is whether an election
to fill a vacancy in the office of judge of the district court
caused otherwise than by the expiration of a full term
entitles the one elected to hold the office for the full con-
stitutional term of six years, or only for the remainder,
if any, of the unexpired term of his predecessor who had
been elected for a full term.

The constitutional provision principally affecting the
question is found in Section 19. of Article 5, which reads
as follows:

"Until otherwise provided by law, the state shall be
divided into three judicial districts, in each of which there
shall be elected at general elections, by the electors thereof,
one judge of the district court therein, whose term shall
be six (6) years from the first Monday in January suc-
ceeding his election and until his successor is duly quali-
fied."

Section 20 designates the counties to be included in the

three districts respectively, until otherwise provided by law; and Section 21 authorizes the legislature from time to time to increase the number of districts and judges thereof, but provides that such increase or change in the boundaries of a district shall not work the removal of any judge from his office during the term for which he may have been elected or appointed, and that the number of districts shall not exceed four until the taxable valuation of property in the state shall exceed one hundred million dollars.

Section 20 of Article 21, entitled "Schedule" is also supposed to have some bearing upon the question. It provides as follows:

"Members of the legislature and all state officers, district and supreme judges elected at the first election held under this constitution shall hold their respective offices for the full term next ensuing such election, in addition to the perod intervening between the date of their qualification and the commencement of such full term."

This is one of the provisions inserted to accomplish without friction the transition from territorial to state government, the time when the state would be admitted having been uncertain at the time the constitution was framed and adopted.

Under the head of "Elections" in Article 6, it is provided in Section 5 that "all general elections for state and county officers, for members of the house of representatives and the senate of the State of Wyoming, and representatives to the Congress of the United States, shall be held on the Tuesday following the first Monday in November of each even year"; and that, "all state and county officers elected at a general election shall enter upon their respective duties on the first Monday in January next following the date of their election, or as soon thereafter as possible."

The first state legislature, by an act approved January 10, 1891, known as Chapter 68, in the published laws of that session, provided that there should be held on the

Tuesday next following the first Monday in November, 1892, and on the Tuesday next following the first Monday in November in each second year thereafter, a general election, at which certain designated county and precinct officers shall be elected. By Section 8 of that act, which is carried into the Revision of 1899 as Section 201, it was provided as follows:

"At the general election held in the year A. D. eighteen hundred and ninety six, and at the general election held every sixth year thereafter, there shall be elected in each judicial district in this state, one judge of the district court for such judicial district, and in case of a vacancy occurring in the said office of a judge of the district court, in any judicial district of this state, either as now or as hereafter constituted, for any cause whatever, such vacancy shall be filled at the general election, when such vacancy shall be required to be filled by law .or the constitution of this state."

By a later act of the same legislature approved January 21, 1891, known as Chapter 100 of the published laws of that session, and which was amendatory of the territorial act of 1890 concerning elections, it was provided in Section 2, as follows:

"There shall be held in the several voting precincts of Wyoming, on the Tuesday next after the first Monday of November, in the year eighteen ninety-two, and on the Tuesday next after the first Monday in November, in each second year thereafter, a general election, at which the following officers shall be elected: A representative, or representatives in Congress, members of the senate and house of representatives of the state, from each county as provided by law, and to which such county may be entitled, and all state and district executive and judicial officers, which are made elective by law, whenever there is a vacancy in any state or district executive or judicial office, or whenever subsequent to such election and prior to the next .general election, any state or district executive or judicial offices shall become vacant by reason of the termination of

the terms of office of the incumbents therein." It was further provided by a subsequent sub-division of the same section that "whenever, however, a vacancy in any state or district office as aforesaid, shall occur less than twenty-five days prior to such election, then, and in that case, at such election no person shall be elected to fill such vacancy." This would leave, in such case, the governor's appointee to serve at least until after the next succeeding election. The provision was doubtless inserted in view of the general provisions with reference to the making of nominations and preparation of ballots, and the obvious inconvenience of holding an election for a vacancy so recently occurring.

The clause of the section last aforesaid providing that at any general election "all state and district executive and judicial officers which are made elective by law, *whenever there is a vacancy in any state or district executive or judicial office,*" shall be elected, is statutory authority for filling a vacancy cuased by resignation or death or the like. This is clear when it is read in contrast with the succeeding part of the section covering a vacancy to occur by reason of the termination of the term of office of an incumbent. The section is numbered 195 in the Revised Statutes of 1899, the order of the two acts in the time of their passage, and of the various sections as found in the acts respectively, not having been followed in the revision.

It is probable that the language of Section 201 (Sec. 8 of the act of January 10, 1891), is largely responsible for the doubt that has grown up, and which we know to have been expressed from time to time, concerning the length of the term of a district judge elected to fill a vacancy other than one about to occur through the expiration of the term of one previously elected, though such doubt might have existed without that section. At least, it is safe to say that the provision in the first part of the section for an election in each judicial district in the year 1896, and every sixth year thereafter, has served to intensify the feeling of uncertainty regarding the question.

It is contended by the Attorney General and other counsel opposing the writ that Section 201, if construed as having required an election in 1896, and every sixth year thereafter, in each district, under circumstances such as those disclosed in relation to the three districts in controversy, would be in conflict with the constitutional provision prescribing the term of a district judge. But they suggest that the section permits of a construction in harmony with the constitution, when all of its provisions are considered, and it is read in connection with and as explained or qualified by Section 195, the latter having been contained in a later act.

It is argued that, since the latter part of Section 201 expressly authorizes a vacancy in the office *"for any cause whatever"* to be filled "at the general election when such vacancy shall be required to be filled by law, or the constitution of this state," the first part providing for sexennial elections was intended to authorize an election at the time the office would be required to be filled by election should the judges first elected, or either of them, serve out the full term, and likewise their successors, but that the latter part was intended to cover the contingency of a change in the sexennial periods resulting from resignation, death or otherwise; and it is contended in support of their view that the words "for any cause whatever" are sufficiently broad to include a vacancy caused or about to occur by the expiration of a full term.

It is further argued that this is made more apparent, if indeed the section is not qualified, by the provision of Section 195 for filling at any general election, not only an existing vacancy occurring not less than twenty-five days before the election, but a vacancy to occur "by reason of the termination of the term of office" of an incumbent. And in this last mentioned provision, it is contended, is to be found positive authority for an election in an even year, other than in 1896 and every sixth year thereafter, for the election of a district judge whenever, prior to the next

general election, .the office will become vacant by reason of the expiration of the term of an incumbent.

It must be conceded, we think, that the argument is sound, at least to this extent, that in case, under the constitution and laws, a full term may expire at a time other than the sexennial period designated in Section 201, then Section 195 contains authority to fill the office at the general election last preceding such expiration. To illustrate, conceding that the election in 1894 in the fourth district was proper, then Section· 195 authorized the election at that time, and if Judge Metz was then elected for a six year term, and he had served out his full term, the section would have authorized an election in 1900.

We are of the opinion, therefore, that there is, and has been since the date of the approval of Chapter 100 .of the Laws of 1890-1891, statutory authority for holding an election for district judge at any general election, when the office will become vacant by the expiration of a term subsequent to such election and prior to the next general election.· The date of the expiration of a term would, of course, then determine the necessity as well as propriety of electing a judge on that ground·at any particular election.

If the constitution has fixed the term, not only of a judge elected immediately prior to the expiration of the term of the previously elected incumbent, but also of one elected to fill a vacancy caused by resignation, then it would be unchangeable by the legislature, and a further consideration of the meaning and effect of the two sections of the statute aforesaid would be unnecessary, except perhaps as showing a legislative interpretation of a doubtful clause of the constitution.

Counsel for the relator maintain that the case of State ex rel. Irvine v. Brooks, 14 Wyo. 393, and the reasoning of the opinion therein, is controlling upon the question here involved. In that case this court had under consideration the term of office of one who had been elected to fill a vacancy caused by resignation in the office of State Treas-

urer, and it was held that he had been elected for the remainder of the unexpired term for which his predecessor had been elected.   The decision was placed mainly upon the ground that the constitution had definitely fixed the time of the commencement and ending of the term, as well as its duration, and that a provision had been made for filling vacancies without making any provision as to the duration of the authority of the person elected to fill the vacancy.   The time of such commencement and termination was held to be expressed in Section 20 of the "Schedule" quoted in an earlier part of this opinion, in connection with the section (Art. 4, Sec. 11) fixing the term; and the principle stated in 23 Am. & Eng. Ency. L. 418, was approved and applied.

As Section 20 of the "Schedule" aforesaid mentions district judges as well as all state officers, and provides that those first elected shall hold office for the full term next ensuing their election, in addition to the period intervening between the date of their qualification and the commencement of such full term, it is earnestly contended that by the rule enforced in the case of the state treasurer the commencement and ending of the term is definitely fixed, when the section is read in connection with Section 19 of Article 5, prescribing the term.

There is some force in the contention.   But the provision of the constitution with reference to the term of office of a district judge is somewhat different from that relating to the office of state treasurer, and there are other distinguishing features necessary to be considered in determining whether the doctrine announced in the former case is applicable to the one at bar.

When the Irvine case was being considered it was thought quite apparent that it was intended by the constitution to prescribe a like regular term, not only as to duration, but as to commencement and termination for the several executive elective officers mentioned in Article 4 of the constitution, and whose terms were fixed thereby at four years. Though there was not a positive expression of that in-

tention, which fact gave rise to the doubt and difficulty of the question, it was regarded as reasonably certain in view of the various provisions relating to the matter; and it was conceived that those provisions could not be otherwise construed than as definitely fixing the duration, and the time of commencement and termination of the term, without providing for the duration of the term of one elected to fill a casual vacancy.

Moreover, in that case the court faced a popular construction in the case of the office of governor, which in this respect seemed to stand upon the same footing as the office of treasurer. In two instances a governor has been elected to fill a vacancy, in one case caused by resignation, and in the other by death, and the person elected served but the unexpired term of his predecessor, and a successor was elected at the next biennial election.

The popular construction in the case of district judges has been more frequently expressed by the action of the electors and election officers and has been entirely different from that with respect to the office of governor. This is clearly disclosed by the facts of this case which are above set out.

So far as the question of public policy may affect the construction of an obscure or doubtful constitutional or statutory provision, whatever reason may seem to exist for filling the elective executive offices provided for in Article 4 of the constitution at the same election, there appears to be no substantial reason for requiring all the district judges of the state to be elected for a full term at the same time.

In the case of the state treasurer, it was found that the constitution provided only that there should be chosen at the times and places of choosing members of the legislature certain executive officers, including a treasurer, and that they should severally hold their offices for the term of four years. A section under the head of "Elections" fixed the time when such officers should enter upon the discharge of their duties; and the section of the "Schedule"

aforesaid stated the length of the term, and when it should commence, of the officers first elected. There seemed to be no other constitutional provision tending to throw light upon the question in that case.

When we come to a consideration of the provisions respecting the term of a judge of the district court, we observe in the first place that it provides generally, without any restriction, that in each judicial district there shall be elected at general elections, by the electors thereof, one judge, "whose term shall be six (6) years from the first Monday in January succeeding his election and until his successor is duly qualified." Upon the face of this provision it applies as well to a judge elected to fill a casual vacancy as to one elected immediately preceding the expiration of the term of a previously elected incumbent. It makes no distinction in that respect so far as its language goes. It amounts to the same as saying that the term of a judge of the district court elected at any general election shall be six years from the first Monday in January succeeding his election, since a particular general election or one in any particular year or those of particular years are not specified; but the expression is "There shall be elected at general elections."

Section 19 aforesaid, begins with the words "until otherwise provided by law," and though the meaning of those words may seem to be somewhat clouded, we think that they were employed with reference only to the number of judicial districts, and were not intended to qualify the remainder of the section relating to the election of judges of the district court. That view is fortified by a consideration of the two succeeding sections, Section 20, which "until otherwise provided by law," states how the three judicial districts provided for in Section 19 shall be constituted; and Section 21 which permits the legislature, under certain restrictions, to increase the number of districts. Any other construction would leave to the legislature the power to change the term of district judges, which, manifestly, was not intended.

The construction given above to the provision of Section 19 of Article 5, viz.: That it fixes a full term of six years for a judge of the district court elected at a general election, whether elected to fill a casual vacancy or in anticipation of the expiration of a full term, seems not only to be the clear meaning and effect of the section standing alone, but such construction is materially aided by a consideration of the provision made in Section 4 of the same article for filling a vacancy in the office of justice of the supreme court. Though the term of the latter office was fixed by the section at eight years commencing from and after the first Monday in January next succeeding an election thereto, the justices first elected under the constitution were required to classify themselves by lot, so that one of them should go out of office at the end of four years, one at the end of six years, and one at the end of eight years from the commencement of their term. It was then provided:

"If a vacancy occur in the office of a justice of the supreme court, the governor shall appoint a person to hold the office until the election and qualification of a person to fill the unexpired term occasioned by such vacancy, which election shall take place at the next succeeding general election."

Argument is unnecessary to show that this provision as to filling a vacancy in the office of justice of the supreme court was made with the particular purpose in view of continuing the classification of the justices, and to prevent the election for a full term of eight years of more than one justice at the same time. It would seem also that the provision was deemed necessary to accomplish that purpose. The reason and necessity of the classification and its continuance is rendered more obvious by the provision in the same section that the justice having the shortest term to serve, and not holding his office by appointment or election to fill a vacancy, shall be the chief justice.

With this provision before the constitutional convention as to the term of one elected to fill a vacancy in the office

of justice of the supreme court, the omission of a similar provision in prescribing the term of a district judge elected at a general election is significant, and leads to the inference that the omission was intended. Clearly the same reason for it did not exist in the case of district judges. There appears to be no reasonable ground, therefore, for restricting the provision of Section 19, as to the term of a district judge elected at a general election to anything short of the plain purport of the language employed.

So construed, and we perceive no other reasonable method of construing the section, what is its effect in connection with Section 20 of the "Schedule?" The latter section is not needed to ascertain the commencement of the regular term of a district judge, since that is definitely provided for in the section above considered. It, however, authorized the judges first elected to serve the intervening time between the date of their qualification and the commencement of the full term in addition to such full term. It may, therefore, by analogy to the case of the state treasurer, be held to fix the time of the ending of the full term. But to apply the principle asserted in the treasurer's case, another essential element is required, viz.: That a provision for filling vacancies shall have been made without providing as to the duration of the authority of the person selected to fill the vacancy. If we are correct in the above construction of the language of Section 19, Article 5, the duration of the authority of the person elected at a general election to fill the vacancy is provided for, the same being six years from the first Monday in January succeeding his election. Thus this case is clearly distinguished from the treasurer's case which is so strongly relied on by counsel for the relator.

We have observed that such has been the popular construction, and we would be aided to some extent by that fact if necessary. That construction has been supported in two opinions of the Attorney General of the state, which, having had reference to a matter of such vital public interest, we may suppose were given general consideration.

In 1896 the question seems to have arisen whether an election for district judge in the fourth district would be required in that year, Judge Metz having been elected in 1894. In an opinion of Attorney General Fowler, dated September 10, 1896, rendered at the request of the Secretary of State to enable him to properly perform his duties with respect to the then ensuing election, it was held that an election in the fourth district was not required, but that the election in 1894 had been properly held, and the term of office of Judge Metz, who had then been elected, would not expire until the first Monday in January, 1901, six years from the commencement of his term. (Atty. Gen'l Rep. 1897, p. 152.)

Again, in 1898, the question was raised as to the time for an election to fill the vacancy caused by the resignation in 1897 of Judge Metz, and what the length of the term would be of the one elected. And in an opinion by Attorney General Van Orsdel, who recently occupied the office of a justice of this court, it was held that the election should be held at the general election in 1898, the next general election succeeding the occurring of the vacancy, and that the person elected to fill the vacancy would be elected for the full constitutional term of six years. (Atty. Gen'l Rep. 1898, p. 86.) In both of the opinions the question here presented was ably and fully discussed with reference to the constitutional and statutory provisions as well as the authorities upon the subject. They would not only be persuasive because of the ability and learning of their respective authors, but as coming from the legal adviser of the executive department, and acted upon by the election officers of the state, as well as respected by the people, they are entitled to much weight in our consideration of the question.

Judicial authority is not wanting in support of the conclusion we have reached. We believe a review of the cases to be unnecessary, but the following may be cited as in point and fully sustaining our views. (The Governor v. Nelson, 6 Ind. 496; State v. Thoman, 10 Kan., 2nd. Ed.,

150; Smith v. Cosgrove, 71 Vt. 196; Powers v. Hurst, 2 Humph. 24; Brewer v. Davis, 9 Humph. 208; People ex rel. v. Dubois, 23 Ill. 498; Smith v. McConnell, 44 S. C. 491; Sandsbury v. Middleton, 11 Md. 296; Op. of Judges, 16 Fla. 841; Op. of Justices, 61 Me. 601; People ex rel. v. Townsend, 102 N. Y. 430; State ex rel. v. Corcoran, (Mo.) 103 S. W. 1044; State ex. rel. v. Johns, 3 Ore. 533; People ex rel. v. Weller, 11 Cal. 77; People ex rel. v. Burbank, 12 Cal. 378; Whipper v. Reed, 9 Rich. (S. C.) 5; Crowell v. Lambert, 9 Minn. 267.)

It is evident that the fact that the certificate issued to Judge Matson upon his election in the first district at the election in 1906 recited that he was elected for the remainder of the unexpired term of Judge Scott cannot operate to shorten his term under the constitution and laws. (State ex rel. v. Corcoran, (Mo.) 103 S. W. 1044; Hale v. Bischoff, 53 Kan. 301; Stadler v. Detroit, 13 Mich. 346.)

Being of the opinion, for the reasons aforesaid, that the election in 1904 in the third and fourth districts, and in 1906 in the first district, of a judge of the district court in those districts respectively were for the full constitutional term of six years, and, therefore, that there is at this time no vacancy in either of said districts required to be filled at the general election to be held in November of the present year, the writ of mandamus prayed for will be denied, except in the case of the second district. It is understood, however, that an election will be called without the writ in that district. Upon the facts set out in this case, an election of judge of the district court for the second judicial district will be required by reason of the fact that the term of the present incumbent of the office will expire on the first Monday in January, 1909, at which time he will have served the full term of six years under his election in 1902.

BEARD, J., and SCOTT, J., concur.