**Gen. 67]** **67**

## PUBLIC OFFICERS AND EMPLOYEES

EDUCATION – WHETHER A STATE SUPERINTENDENT OF
 SCHOOLS APPOINTED TO A VACANCY IN THE MIDDLE OF A
 TERM SERVES FOR THE REMAINDER OF THE UNEXPIRED
 TERM

April 21, 2021

*Clarence C. Crawford*
*President, Maryland State Board of Education*

You have asked for an opinion of the Attorney General on whether, when the current State Superintendent of Schools ("State Superintendent") steps down on June 30, 2021, the Maryland State Board of Education (the "State Board") can offer a new State Superintendent a full four-year term beginning on July 1, 2021, instead of only the remaining three years in the term of the current State Superintendent, which began on July 1, 2020. Although you acknowledge in your request that § 2-302 of the Education Article seems to provide that the State Superintendent's successor must be appointed to complete the remaining three years of the current Superintendent's term, you have asked us to consider whether the State Board can nonetheless offer a full four-year term to the new State Superintendent to begin on July 1, 2021. In the event that we conclude that the State Board cannot offer a full four-year term to the new State Superintendent, you have also asked for suggestions as to legislative language that would permit the State Board to offer a new full term to a State Superintendent hired to fill a vacancy in the middle of a term.

For the reasons explained below, it is our opinion that, assuming that the current State Superintendent resigns or retires in June of 2021 before the expiration of her four-year term, the State Board cannot offer the next State Superintendent a new four-year term starting July 1, 2021. Rather, the statute expressly provides that "[t]he State Board shall appoint a new State Superintendent to fill a vacancy in that office for the remainder of the unexpired term" and does not provide for any exceptions to that rule. Md. Code Ann., Educ. ("ED") § 2-302(e). Thus, the next appointee must be appointed to serve the remainder of the current State Superintendent's term. While it is beyond our role to tell the General Assembly the precise language that it should use if it wants to permit the State Board to give a full four-year term to a State Superintendent appointed to fill a mid-term vacancy under these

circumstances, we are able to provide examples of statutes that could be interpreted in that manner.

## I
## Background

Maryland law governing the appointment and term of the State Superintendent dates back nearly 200 years. In 1825, the General Assembly passed a law providing that "there shall be constituted and appointed by the governor and council, an officer to be known and distinguished as the superintendent of public instruction." 1825 Md. Laws, ch. 162, § 1. Almost forty years later, during the Civil War, the delegates to the Constitutional Convention of 1864 wrote the office of the State Superintendent into Maryland's Constitution. Although ultimately short-lived, Article VIII, § 1 provided that "[t]he Governor shall, within thirty days after the ratification by the people of this Constitution, appoint, subject to the confirmation of the Senate, at its first session thereafter, a State Superintendent of Public Instruction, who shall hold his office for four years and until his successor shall have been appointed and shall have qualified." Md. Const., Art. VIII, § 1 (1864). Section 4 of the same Article required that the General Assembly, at its first session after adoption of the 1864 Constitution, "provide a uniform system of Free Public Schools[.]" Thus, in 1865, the Legislature established that system and provided that supervision and control of public instruction would be vested in a State Board of Education and "a State Superintendent of Public Instruction, appointed by the Governor, subject to the confirmation of the Senate." 1865 Md. Laws, ch. 160.

In 1867, a constitutional convention met again and drafted a fourth version of Maryland's Constitution. This Constitution, which was ratified in September 1867, contained a far less specific education clause, leaving it to the Legislature to determine questions of control and supervision. That new provision directed that the General Assembly, at its first session after adoption of the Constitution, "establish, throughout the State, a thorough and efficient system of free public schools." Md. Const., Art. VIII, § 1 (1867). The Constitution also provided that "[t]he system of public schools, as now constituted, shall remain in force until the end of the said first session of the General Assembly, and shall then expire, except so far as adopted, or continued, by the General Assembly." Md. Const., Art. VIII, § 2. These same provisions are contained in our current Constitution.

Freed from any specific constitutional prescriptions regarding the structure, organization, and control of the public education system, the General Assembly, in 1868, designed a body of public education law that committed control entirely to local school districts; there was no centralized supervision role for the State. *See* 1868 Md. Laws, ch. 407 (providing that "[e]ducational matters affecting a County shall be under the control of a Board of County School Commissioners"). This scheme of local control lasted for a few years, until 1872, when the General Assembly passed a law that gave some control and supervision back to the State. *See* 1872 Md. Laws, ch. 377 (providing that "[e]ducational matters affecting the State and the general care and supervision of public education shall be entrusted to a State Board of Education"); *see also* Md. Code, Art. 27, §§ 2-4 (1879) (providing supervisory roles for a state board of education, a board of county school commissioners, and district school trustees).

The role of State Superintendent reappeared in the State's education laws in 1900, when the General Assembly amended what was by then Article 77 of the Maryland Code. The amendment provided that "the Governor, by and with the advice and consent of the Senate, shall appoint a competent person as Superintendent of Public Education for the State of Maryland, who shall serve for a term of four years, beginning on the first Monday in May next ensuing his appointment, and until his successor has been appointed and qualified according to law." 1900 Md. Laws, ch. 428.

In 1914, the Legislature created a commission to conduct a survey of public schools in Maryland. 1914 Md. Laws, ch. 844. The commission was "directed to report its findings, with recommendations to the Governor, which report shall be transmitted by the Governor to the General Assembly at its session of 1916." *Id.* The resulting report made recommendations for changes to the State Superintendent provisions. *See* Abraham Flexner & Frank P. Bachman, Public Education in Maryland, A Report to the Maryland Educational Survey Commission 22-29 (1916) ("Flexner & Bachman Report"). In particular, the report noted that the current law provided that the State Superintendent "holds office for four years—as does the Governor who appoints him[,]" *id.* at 22, and recommended that the State Superintendent, "who is the state's educational executive, should be chosen, not by the Governor, but by a board as far removed from political influences as possible, for a term either indefinite or long enough to avoid danger of political complications." *Id.* at 23.

Following the Flexner & Bachman Report, the General Assembly adopted the commission's recommendation that the Governor be stripped of appointment authority but declined to alter the length of the State Superintendent's term. *See* 1916 Md. Laws, ch. 506 ("The state superintendent of schools shall be appointed by the state board of education for a term of four years. . . . In case of vacancy due to any cause, the state board of education shall fill the vacancy, and the appointment shall be for the unexpired term, and until a successor shall qualify."). This amendment also represented the first time that the General Assembly explicitly addressed what was to occur in the event of a vacancy in the position of the State Superintendent.

The provision continued essentially unaltered in the Maryland Code until 1969. *See, e.g.*, Md. Code, Art. 77, § 27 (1939). In that year, the Maryland General Assembly amended Article 77 by specifying that the State Superintendent's four-year term was to run "from the first day of July next succeeding his appointment." 1969 Md. Laws, ch. 405. This change was recommended in the 1968 Report of the School Law Revision Commission. *See* Report of the School Law Revision Commission 35 (Jan. 1, 1968) ("1968 Report") ("This section establishes the beginning date of the term of office of the State Superintendent of Schools. At present the law is silent on the subject."); *see also* 27 *Opinions of the Attorney General* 113, 115-16 (1942) (advising that, before the 1969 revision, the State Superintendent's term was to begin on *June* 1 every four years, starting from June 1, 1916).

Finally, in 1978, Article 77 was repealed and recodified as the Education Article. *See* 1978 Md. Laws, ch. 22. The provisions governing the appointment of the State Superintendent remained substantively the same, with only minor changes for style and clarity. *See id.* (Revisor's Note). Under the relevant provision as it exists today, "[t]he State Superintendent shall be appointed by the State Board for a term of 4 years beginning on July 1 after the Superintendent's appointment and serves until a successor is appointed and qualifies," ED § 2-302(a), and "[t]he State Board shall appoint a new State Superintendent to fill a vacancy in that office for the remainder of the unexpired term," ED § 2-302(e).

## II
## Analysis

Your question is one of statutory interpretation. Therefore, we must determine the intent of the General Assembly in enacting the current law governing the appointment and term of the State

Superintendent.  Here, the relevant question is whether the General Assembly intended that a State Superintendent appointed to fill a mid-term vacancy be appointed to serve the remainder of the previous Superintendent's term or intended that a State Superintendent would always begin a full four-year term on July 1 following the appointment regardless of whether the previous Superintendent had been in the middle of a term.[1]

To ascertain the intent of the General Assembly, we first look to the words of the statute and determine, if possible, their plain meaning.  *Kushell v. Department of Nat. Res.*, 385 Md. 563, 576 (2005).  "In construing the plain language, '[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application.'"  *Id.* at 576-77 (quoting *Price v. State*, 378 Md. 378, 387 (2003)).  If the language of the statute is unambiguous, then effect must be given to the statute as written. *Id.* at 577.

Turning to the language of ED § 2-302, the Legislature made clear that a State Superintendent appointed to fill a mid-term vacancy serves the remainder of the previous Superintendent's term.  The General Assembly explicitly provided that, when a vacancy occurs during a regular four-year term, "[t]he State Board shall appoint a new State Superintendent to fill a vacancy in that office for the remainder of the unexpired term."  ED § 2-302(e). Such explicit language leaves no room for doubt that such an appointee is to serve the remainder of the predecessor's unexpired term, rather than receiving a new four-year term.  *Cf. Sansbury v. Middleton*, 11 Md. 296, 313-14 (1857) (holding that a clerk appointed to fill a mid-term vacancy was entitled to a full term but contrasting the provision at issue there from other constitutional provisions containing language, like that at issue here, explicitly limiting service of mid-term successors to the remainder of an unexpired term); *accord Wilson v. Shaw*, 188 N.W. 940, 943 (Iowa 1922) ("When a person is appointed to fill a vacancy for an

---

[1] In some cases, courts frame this type of question as whether the term is intended to run with the office (i.e., a new term of office begins every four years on July 1) or with the officer (i.e., a new four-year term begins with the appointment of a new officer, regardless of how long the previous officer in that position served). *See, e.g.*, *People v. Nickel*, 100 P. 1075, 1076 (Cal. Ct. App. 1909).  For clarity and precision, we will focus on the specific question asked rather than using this shorthand here.

unexpired term, the unambiguous meaning is that he is to hold for the same term as the person whose place he takes."); 67 Cal. Op. Att'y Gen. 220 (1984) ("To hold that the terms run with the officer would have the additional effect of rendering meaningless the language . . . providing that vacancies will be filled only for the balance of the unexpired term.").

Although no Maryland appellate court has yet decided this question under ED § 2-302, at least one case addressed a similar provision. *See Ash v. McVey*, 85 Md. 119 (1897). That case involved the appointment of George Biddle, in 1892, to a term on the Board of School Commissioners for Cecil County. According to the statute as it existed at the time, Mr. Biddle's four-year term began on the first day in August following his appointment. *See* Md. Code, Art. 77, § 6 (Suppl. 1898), as amended by 1892 Md. Laws, ch. 341. Mr. Biddle resigned, however, in December of 1892, during a recess of the Legislature. The statute provided that, in the event of such a vacancy during a recess of the General Assembly, "the Governor shall have power to appoint a qualified person to fill the vacancy *for the unexpired term*[.]" Md. Code, Art. 77, § 25 (Suppl. 1898) (emphasis added). The Governor subsequently appointed George Ash to fill the vacancy, and the Senate confirmed Mr. Ash at the next session of the Legislature, in January of 1894. Then, in January of 1896, presumably in anticipation of the upcoming expiration of Mr. Ash's term on July 31, 1896, the Governor appointed S.G. Bye as Mr. Ash's successor. However, the Senate failed to confirm the new appointee before it adjourned. Eventually, at the end of the four-year term that had originally begun with Mr. Biddle, the Governor appointed George McVey to succeed Mr. Ash.

The dispute before the Court of Appeals was essentially about who had the right to occupy the seat on the Cecil County Board of School Commissioners—Mr. Ash or Mr. McVey. The precise question, which involved a constitutional provision governing recess appointments, was different than the question you ask here, but the Court's interpretation of Article 77, §§ 6 and 25 in the course of answering that other question is nevertheless instructive. The Court found that it was "clear" that the appointment of Mr. Ash as a school commissioner in December of 1892 was for the unexpired term of his predecessor. *Ash*, 85 Md. at 119. Looking at Article 77, § 25's provision that "the governor shall have power to appoint a qualified person to fill the vacancy for the unexpired term," the Court said that "[t]he plain meaning of this section of the statute is that a person appointed to fill a vacancy holds for the same term as the person whose place he takes." *Id.*

Given the similarities between the statutory provisions at issue in *Ash* and the statute here, that case suggests that the plain meaning of ED § 2-302(e) is that "a person appointed to fill a vacancy holds for the same term as the person whose place he takes." *Ash*, 85 Md. at 119. That conclusion is also consistent with our characterization, in a 1942 opinion, of an earlier version of what is now ED § 2-302 as establishing fixed terms for the State Superintendent that ran every four years from a specific date in 1916. *See* 27 *Opinions of the Attorney General* at 115-16 (involving the version of the statute in place before the Legislature expressly provided that the Superintendent's term was to begin on July 1 after the Superintendent's appointment).

Although the language of ED § 2-302 is plain and we need not go any further, we have also examined the legislative history of the enactment as a "check" on the reading of a statute's plain language, *Washington Gas Light Co. v. Maryland Pub. Serv. Comm'n*, 460 Md. 667, 686 (2018), and that history is consistent with our interpretation. Beginning in 1900, the Legislature specified that the State Superintendent's term was to be four years, 1900 Md. Laws, ch. 428, and then further amended the State Superintendent provisions in 1916 to vest appointment power with the State Board rather than the Governor, 1916 Md. Laws, ch. 506. The 1916 amendment was the result of a report that had recommended that the State Superintendent be chosen "by a board as far removed from political influences as possible, for a term either indefinite or long enough to avoid danger of political complications." Flexner & Bachman Report at 23.

The 1916 amendment was also the first time that the Legislature specified that, in case of a vacancy in the office of the State Superintendent, an appointment to fill the vacancy "shall be for the unexpired term," which makes sense given the purpose of the amendment to better insulate the State Superintendent from politics. *Id.* After all, an office of State Superintendent that has a defined, predictable term is consistent with an intention to keep that office removed from political whims and influences. No matter who holds the governorship—and which Governor's appointees sit on the State Board of Education—the State Superintendent holds a four-year term that will begin and end on the same fixed dates and, in the event of a vacancy, the new appointee simply fills out the predecessor's term. Such design presumably makes it more difficult and less tempting for a Governor (through the Governor's appointees on the State Board) to try to force the ouster of a State Superintendent before the Superintendent's term ends and also

provides a sense of stability within the leadership of Maryland's public education system.[2] Thus, since at least 1916, the Legislature has, by the words of the statute, indicated a clear intent that a State Superintendent appointed to fill a mid-term vacancy is appointed to serve the remainder of the previous Superintendent's unexpired term. The history of the statute is entirely in line with its plain language.

Finally, the historical practice under the statute aligns with our interpretation of ED §§ 2-302(a) and 2-302(e). Starting in 1900—when the Legislature reintroduced the role of the State Superintendent—there have been eleven individuals who have served as State Superintendent for either a full or interim term, or both, and the terms have run every four years from that first appointment.

M. Bates Stephens served as State Superintendent from 1900 until 1920, i.e., five four-year terms. *See* Maryland Manual 1900 at 155 (listing M. Bates Stephens as State Superintendent and indicating his first term expired in 1904); Maryland Manual 1920 at 127 (listing Mr. Stephens as State Superintendent). Albert S. Cook, his successor, also served for a total of twenty years, or five four-year terms. *See* Maryland Manual 1921 at 16 (listing Albert S. Cook as State Superintendent). In 1940, Thomas G. Pullen, Jr. was appointed State Superintendent and held the post until 1964, or for six four-year terms. James A. Sensenbaugh followed from 1964 until 1976—three four-year terms. Starting in 1976, David W. Hornbeck also served three four-year terms as State Superintendent, from 1976 until 1988. *See generally* Editorial, *Our View: The Way Md. Picks Its State Superintendent Has Worked for 100 Years*, Balt. Sun, Feb. 19, 2016, at 16A (detailing history of State Superintendent appointments beginning with Mr. Cook, including lengths of terms).

The same has been true more recently even when some State Superintendents resigned before the end of their terms. Joseph L. Shilling was appointed in 1988 and resigned three years into his four-year term. *See* Amy Goldstein, *Md. Selects School Chief After One Interview; Ex-Hornbeck Aide Schilling to Succeed Him*, Wash.

---

[2] Members of the State Board of Education are appointed by the Governor, with the advice and consent of the Senate, ED § 2-202(a), and serve staggered terms of four years, ED § 2-202(d)(1). Thus, an incoming Governor does not have the power to immediately appoint all of the members of the State Board. The statute also provides limited reasons for the State Board to remove a State Superintendent: immorality, misconduct in office, insubordination, incompetency, and willful neglect of duty. ED § 2-302(d).

Post, June 28, 1988. The State Board appointed Nancy Grasmick to fill the vacancy for the remainder of Dr. Shilling's term, and after being reappointed she then served until 2011, when she resigned the post three years into her fifth four-year term. Liz Bowie et al., *Grasmick Announces She'll Retire in June*, Balt. Sun, Mar. 31, 2011, at 1A. Bernard J. Sadusky was then appointed interim State Superintendent for the remainder of Dr. Grasmick's term, and in 2012, Lillian M. Lowery was appointed to a full four-year term. Liz Bowie, *Lowery to Head State's Schools*, Balt. Sun, Apr. 21, 2012, at 1A. Dr. Lowery resigned in 2015. Jack R. Smith then served as interim State Superintendent from 2015 until the end of Dr. Lowery's four-year term in 2016. Finally, in 2016, the current State Superintendent, Karen B. Salmon, was appointed. Liz Bowie, *Salmon to Lead State's Schools: Ex-Administrator on Shore Appointed as Md. Superintendent*, Balt. Sun, May 25, 2016, at 1. Her four-year term ended in 2020. As you have indicated in your request, though she was appointed to another four-year term in 2020, she is expected to resign and leave the position on June 30, 2021].

Thus, it appears that the State Board has consistently adhered, in practice, to § 2-302(e)'s requirement that a State Superintendent appointed to fill a vacancy that occurs during a four-year term is appointed for the unexpired portion of that four-year term. Given all of the above—especially the unambiguous language of the statute—it is clear that ED § 2-302 does not permit the State Board to offer a full four-year term to the new State Superintendent appointed to fill the mid-term vacancy that the State Board anticipates will occur in June of this year.[3]

---

[3] To be clear, there might be situations when the State Board could appoint someone to fill a mid-term vacancy as State Superintendent (for the remainder of the unexpired term) and *also*, at the same time, prospectively appoint that same person to the full four-year term that is to begin after the end of that unexpired term. It is generally "permissible for an appointing authority to make appointments prospectively, i.e., to announce and put in motion the appointment of a person to fill a prospective vacancy before the vacancy actually occurs, so long as the vacancy will, in fact, exist when the new appointment becomes effective" and so long as "the vacancy to be filled by the prospective appointment [is] certain to exist while the appointing authority is still empowered to fill the vacancy." *Bryan v. Makosky*, 380 Md. 603, 611-12 (2004). The statute governing the appointment of the State Superintendent also appears to contemplate that the State Board can make prospective appointments under at least some circumstances, given

You have provided us with four reasons why you nonetheless believe the law should afford the State Board the flexibility to offer the next State Superintendent a full four-year term instead of the three years remaining on Dr. Salmon's current term. First, you note that the current State Superintendent's tenure was extended because of the COVID-19 pandemic, in order to allow her to provide continuity and stable leadership to the Maryland State Department of Education and the State Board. Second, you have been advised to expect a "highly competitive search environment" with more superintendent vacancies than usual, and you point out that "top candidates tend to favor longer employment terms." Third, you state that, because Maryland is facing an unprecedented education crisis due to the pandemic, the next State Superintendent must be an "exceptional educational executive leader," and you worry that, without such a leader, many students will have to live with lifetime economic and societal consequences of their learning loss. Finally, you have indicated that, if Maryland does not accelerate learning in the wake of the pandemic, the State will suffer economic costs, including "a significant drop in GDP and

---

that it provides for a term "beginning on July 1 *after the Superintendent's appointment*," ED § 2-302(a) (emphasis added)—a provision which makes sense only if the State Board can make the appointment at some point before the vacancy that is to occur on July 1. However, the State Board cannot make a prospective appointment this far in advance to a term that does not begin until July 1, 2024. Under the common law rule, "a prospective appointment may not be made to fill a vacancy that is not certain to occur during the term of office of the appointing authority." *Bryan*, 380 Md. at 612. Here, it appears that all of the members of the current State Board have terms that will expire before July 1, 2024. It is beyond the scope of this opinion to determine exactly when a multi-member body like the State Board becomes the "appointing authority" empowered to fill a prospective vacancy, *see* Letter from Sandra Benson Brantley, Assistant Attorney General, to Delegate Pamela D. Beidle at 3 (April 26, 2016) (summarizing differing views of the law on that issue), but it surely cannot qualify when all its members have terms of office that expire before the date the vacancy is certain to occur. And even if that were not the case, ED § 2-302(a) arguably permits the Board to make a prospective appointment only in the year before the vacancy is certain to arise—i.e., not before July 2, 2023, for a term that is to begin on July 1, 2024—even when the common law would allow the appointment. Otherwise, the State Superintendent could not begin the term on the July 1 "after the Superintendent's appointment," as is contemplated by the statute. Of course, nothing prevents the State Board, once it has the power to do so, from reappointing the new State Superintendent to the full four-year term that will begin on July 1, 2024. But it cannot bind itself to do that now.

decreased competitiveness in [its] ability to attract and maintain high paying industries."

None of those reasons, however, allow for an exception to the plain language of the statute. Though it is true that "the plain-meaning rule is not rigid[,]" *Kaczorowski v. Mayor and City Council of Baltimore*, 309 Md. 505, 513 (1987), the types of considerations that you have raised are generally relevant only when the statute is "susceptible of more than one meaning." *Id.* (quoting *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75 (1986)). That is not the case here, as the statutory language is clear and does not admit of any exceptions. In light of the plain language of the statute, the policy concerns you cite are more properly directed to the General Assembly.

As a final matter, you ask for suggestions as to how the statute could be amended to permit the State Board to offer a new, full term to a State Superintendent hired to fill a vacancy in the middle of a term. There are likely several different ways that such a change could be accomplished, and it is beyond our role to favor any one approach over another from a policy perspective. Some possible approaches include that ED § 2-302(e) could be amended to expressly provide that a State Superintendent appointed to fill a mid-term vacancy is appointed for a full term of four years, to expressly allow for exceptions to the statute's current mid-term vacancy rule in certain specified circumstances, or to expressly provide for the appointment of an interim State Superintendent who serves only until the next July 1, when the State Board is to appoint a State Superintendent to a full four-year term. *Cf.* ED § 4-201(d) (providing, as to *county* superintendents of schools, that "[i]f a vacancy occurs in the office of county superintendent, the county board shall appoint an interim county superintendent who serves until July 1 after the interim county superintendent's appointment").[4]

Alternatively, ED § 2-302(e) could be deleted in its entirety, and the statute could be amended to look more like other provisions that have been interpreted to afford each new appointee a full term regardless of whether the predecessor in that position had been in the middle of a term. *See, e.g.*, Letter from Patrick B. Hughes,

---

[4] We do not purport here to definitively interpret ED § 4-201 in its entirety, as that would be outside the scope of your opinion request. We merely cite the provision to point out an example of alternative language that the General Assembly might consider using.

Chief Counsel for Opinions & Advice, to Christopher Mincher, Deputy Legal Counsel to the Governor (Feb. 14, 2020) ("Hughes Letter") (interpreting §§ 14-102(c) and 14-104 of the Criminal Procedure Article to provide that each new State Prosecutor is appointed for a term of six years and is not required to serve out the unexpired portion of the predecessor State Prosecutor's six-year term); *cf. Sansbury*, 11 Md. at 313-17 (interpreting a constitutional provision stating that, in case of a vacancy in the office of clerk of the circuit court, a judge shall appoint a clerk to serve until the next election, and concluding that the clerk subsequently elected was entitled to a full six-year term); *Marshall v. Harwood*, 5 Md. 423, 431-32 (1854) (examining a constitutional provision stating that the State Librarian was to be elected by the Legislature for a term of two years and concluding that a librarian elected after the office became vacant four months into his predecessor's term was entitled to hold office for a full two years after the successor's election, not the remainder of the prior librarian's term, because there is "no intimation in express terms in the constitution, nor can we infer by analogy from any of its other provisions, that it was the duty of the legislature to regard the term of . . . the former incumbent, as still subsisting at the time of the election of [the current librarian]").

More specifically, when a provision does not expressly state that the person appointed to fill a mid-term vacancy serves for the remainder of the unexpired term and also does not imply as much by, for example, fixing the dates for the beginning or end of the term or providing for staggered terms, the general rule seems to be that the person appointed to that mid-term vacancy may receive a full term. *See, e.g.*, *Marvel v. Camden County*, 57 A.2d 455, 458 (N.J. Ct. Err. & App. 1948) ("Where no time is fixed for the beginning or end of the period during which a public office is to be occupied and the duration of such period is alone designated, a person selected to fill a vacancy in such office may serve the full term and not merely the unexpired balance of the prior incumbent's term." (internal quotation omitted)); *State v. Malone*, 174 S.W. 257, 262 (Tenn. 1915) ("[T]he rule is general that when the length of the term, merely, is fixed, with no set time for its beginning, or no date for its ending, and no reference to an unexpired term, or to a vacancy in the term of office, as distinguished from a vacancy in the office itself, it is considered that upon the happening of a vacancy the office reverts to the people, or sovereign, and when again vested it is not for an unexpired term, but for the full term."); *Clark v. State*, 59 So. 259, 262 (Ala. 1912) (explaining that, generally, a mid-term appointee receives a full term when "no express provision is made for filling vacancies, or where provision

is made for filling vacancies by appointment, but without fixing the duration of authority of persons so appointed" and that, generally, a mid-term appointee serves only for the unexpired portion of the predecessor's term when the statute "expressly provide[s] for, or necessarily contemplate[s] the existence and filling of, unexpired terms"); *Nickel*, 100 P. at 1075; *Hughes v. Buckingham*, 5 Smedes & M. 632 (Miss. 1846); 70 Cal. Op. Att'y Gen. 168 (1987); 29 Or. Op. Att'y Gen. 58 (1958); 67 C.J.S. Officers § 183; 63C Am. Jur. 2d *Public Officers and Employees* § 146; Throop, *Public Officers* §§ 319, 320 (1892).[5]

That is not an absolute rule, of course. *See* McQuillin, *Municipal Corporations* § 12:164 (declining to lay down a definitive rule "as to the duration or length of the term of one appointed or chosen to fill a vacancy in office").[6] "[W]hen dealing with an office created by the General Assembly, the question will always be one of legislative intent, and it will thus always be necessary to examine all aspects of the statutory scheme to determine what the General Assembly intended with respect to the particular office at issue." Hughes Letter at 6.

---

[5] Although our Office issued three opinions in the early 1900s concluding that county commissioners appointed to fill a vacancy in the middle of a term under a particular statute served for the unexpired term, those opinions did not provide much in the way of analysis for why that was the case, and we do not read them as setting an overarching rule for when mid-term appointees serve for the unexpired term of their predecessors or for a new, full term. *See* 8 *Opinions of the Attorney General* 132 (1923); 2 *Opinions of the Attorney General* 345 (1917); 2 *Opinions of the Attorney General* 347 (1917). In any event, for what it is worth, the result in those opinions seems consistent with the general rule stated in the above paragraph, in that the county commissioners appear to have been serving staggered terms at the time, which (under the general rule) implies that a person appointed to a mid-term vacancy is to serve for the remainder of the unexpired term. *See* 1894 Md. Laws, ch. 305 (Frederick County); 1892 Md. Laws, ch. 249 (Caroline County); 1892 Md. Laws, ch. 569 (Charles County). It also appears that, in the 1923 opinion, the Attorney General may have analyzed the wrong statute, as there was a provision in the Public Local Laws that provided a special procedure for filling mid-term vacancies in the office of county commissioner in Caroline County. *See* Code of Public Local Laws of Maryland, Art. 6, § 100 (1930).

[6] We do not discuss here, for example, a statute that expressly provides for a *temporary* appointment until an appointee can be chosen, either for the remainder of an unexpired term or a full, new term.

We can say, however, that it is more likely that a mid-term appointee would be entitled to a full term if the statute does not expressly provide that an individual appointed to fill a vacancy serves for the unexpired term, does not fix the dates for the beginning or end of the term, does not provide for staggered terms, and does not refer to a vacancy *in the term*, as opposed to a vacancy in the office.[7]   For example, Title 14 of the Criminal Procedure Article provides that "[t]he term of the State Prosecutor is 6 years," Md. Code Ann., Crim. Proc. ("CP") § 14-102(c)(2), and that when a vacancy in the office occurs, the State Prosecutor Selection and Disabilities Commission must begin a search process for prospective nominees, CP § 14-104(a), and nominate one or more legally and professionally qualified candidates to the Governor, CP § 14-104(b)(2).   That statutory scheme "does not include any reference to unexpired terms and does not, either explicitly or implicitly, fix the dates for the beginning or end of the term," but rather "merely fixes the duration of the term."  Hughes Letter at 3. The statute also refers to a vacancy in the "position" of State Prosecutor, rather than in the officer's term.  *Id.* at 5.  Thus, based on the precedent cited above, our Office advised that "a new State Prosecutor appointed to fill a vacancy in the office is entitled to a full six-year term, not just the remainder of an unexpired term."  *Id.* at 5.  If the General Assembly were to amend ED § 2-302 to look more like the statute governing the State Prosecutor's term,

---

[7] We note that, under ED § 2-302(a), the General Assembly has specified a fixed calendar date for the State Superintendent's term to begin—the first day of July.  ED § 2-302(a).  Even assuming that subsection (e) of the statute were deleted, therefore, that might not by itself make it clear that an appointee to a mid-term vacancy receives a new full term.  *See, e.g.*, 67 C.J.S. Officers § 183 ("When the duration of the term is fixed, and also the beginning or ending, or both, a vacancy, if it occurs, is in the term of office as distinct from being in the office itself. An appointment to fill such vacancy can be only for the unexpired portion, and the successor does not serve an independent term of his or her own.").  In the absence of subsection (e), there would likely be some ambiguity in the statute.  Although a fixed start date for a term generally suggests that a mid-term appointee to a vacancy serves for the unexpired portion of the term, subsection (a) says that a new State Superintendent serves for a term of four years "beginning on July 1 *after the Superintendent's appointment*," ED § 2-302(a) (emphasis added).  That language, in the hypothetical absence of subsection (e), could suggest that each new appointee receives a full four-year term beginning on July 1 after the appointment.  We have no need to definitively decide how that hypothetical statute, without subsection (e), would be interpreted. But it would be advisable for the General Assembly to be clearer about its intent if it were to decide to provide each new mid-term appointee with a full term.

therefore, the statute would likely be read to allow a State Superintendent appointed to fill a mid-term vacancy to serve a full four-year term.

### III
### Conclusion

In our opinion, under the statute as it currently exists, the State Board may not offer a full four-year term to the new State Superintendent who will be appointed to fill the anticipated vacancy in the current State Superintendent's four-year term. Instead, assuming the current State Superintendent leaves office on June 30, 2021, as expected, the State Board may only appoint a new State Superintendent to serve the remaining three years of the current State Superintendent's term, and the statute does not allow for any exceptions to that rule.

> Brian E Frosh
> Attorney General of Maryland
>
> Sara Klemm
> Assistant Attorney General

Patrick B. Hughes
Chief Counsel, Opinions and Advice